CASE 52—PETITION ORDINARY—JUNE 7.

## Lou. & Nash, R. R. Co. v. Mitchell.

APPEAL FROM JEFFERSON COURT OF COMMON PLEAS.

1. NEGLIGENCE—PLEADING.—In a common law action for negligence, the degree of negligence, whether willful, gross or ordinary, need not be stated. It is a matter of proof and not of averment.

In this case, under a general averment of negligence, the question whether the injury was caused by *gross* negligence was properly submitted to the jury.

2. THE SPECIAL FINDINGS OF A JURY, like a general verdict, cannot be

| 87 | 327 |
| 94 | 174 |
| 94 | 374 |

| 87 | 327 |
| 111 | 806 |

| 87 | 327 |
| d114 | 752 |

| 87 | 327 |
| 119 | 645 |

| 87 | 327 |
| d122 | 620 |

| 87 | 327 |
| 127 | 805 |

| 87 | 327 |
| f129 | 664 |

| 87 | 327 |
| 133 | 511 |

disturbed upon the ground that they are against the weight of the evidence, unless they are flagrantly so.

3. Gross Negligence.—The absence of slight care in the management of a railroad train is *gross* negligence.

It was the duty of the conductor of a train to see that there was no new movement of the train while the brakeman was making a coupling under his direction, and he was guilty of gross negligence in failing to see that no such movement took place.

4. Exemplary Damages.—The finding of gross negligence authorized the finding of exemplary damages. The jury, however, were restricted to compensatory damages, of which the company of course cannot complain.

5. Excessive Verdict.—It is only when the damages assessed by the jury are glaringly excessive, and appear at first blush to have resulted from passion or prejudice, that the court can set aside the verdict upon that ground. Every verdict should be regarded *prima facie* as the result of the exercise of an honest judgment upon the part of the jury.

As the evidence in this case shows that the plaintiff has suffered beyond estimate, his life for weeks hanging in the balance; that he is a cripple for life, disabled from earning a living, at least at his accustomed employment, if not altogether, and in a large measure deprived of the enjoyment of life, a verdict awarding ($10,000) ten thousand dollars as compensatory damages, will not be set aside upon the ground that it is excessive.

5. Special interrogatories propounded to the jury are not open to the objection that they are improperly leading and suggestive, merely because their form indicates to the jury how to find in order to authorize a judgment for the one party or the other.

7. Same.—The court did not err in refusing to direct the jury to find whether the injury was the result of an accident. It was not a question of accident under the pleadings, but whether the defendant had been guilty of gross neglect, or the plaintiff of such negligence that but for it the injury would not have happened.

8. Evidence—Prejudicial Error.—Whether evidence that the plaintiff had a family was competent in this case is not necessary to determine, as such evidence, if incompetent, was not prejudicial, the jury being restricted in estimating the damages to such sum as would "reasonably compensate plaintiff for the injuries sustained by him because of such neglect the bodily and mental suffering (if any) resulting directly from such injuries, and the impairment of capacity (if any) to labor and enjoy life resulting also from said injury."

9. Reversible Error.—If an erroneous step or instruction in a case be corrected by a subsequent instruction or otherwise, no ground for reversal exists.

Lou. & Nash. R. R. Co. v. Mitchell.

WM. LINDSAY FOR APPELLANT.

1. The findings of the jury to the effect that the injury was traceable to neglect on the part of the conductor of the train are wholly unsupported by the evidence.

2. The special interrogatories propounded by the court were misleading and suggestive of the answers to be given, and some of them were wholly unauthorized by any testimony in the record.

3. The verdict was excessive, and the result of prejudice and passion on the part of the jury.

4. The court erred in admitting testimony as to the size and condition of plaintiff's family. Such testimony is never competent where compensation alone is to be given. (P., Ft. W. & C. Ry. v. Powers, 74 Ill., 343; C. & N. W. Ry. Co. v. Bayfield, 37 Mich., 215.)

   The case of L., C. & L. R. R. Co. v. Mahoney's Adm'r, 7 Bush, 238, was an action under the statute to recover exemplary damages for alleged willful neglect.

5. The burden was on the plaintiff to show that the company was negligent, and also that his own negligence did not contribute to the injury. (Pierce on Railroads, 382; Sherman and Redfield on Negligence, sec. 99; Ill. Cent. R. R. Co. v. Henck's Adm'r, 72 Ill., 286; Central R. & B. Co. v. Kelly, 58 Ga., 114; M. & O. R. Co. v. Thomas, 42 Ala., 672; L., W. & W. R. R. Co. v. Moore, 77 Ill., 217; K. P. R. R. Co. v. Salmon, 11 Kansas, 83; Sullivan's Adm'r v. L. B. Co., 9 Bush, 88.)

6. When negligence can only be conjectured, the verdict ought not to stand. (Avery v. Bowden, 6 E. & B., 973; McMahon v. Leonard, 6 H. of L. Cases, 970, 993.)

7. The court improperly refused to submit the question to the jury whether the injury resulted from an accident which the train men could not provide against by the use of ordinary diligence.

BARNETT, NOBLE & BARNETT OF COUNSEL ON SAME SIDE.

BROWN, HUMPHREY & DAVIE FOR APPELLEE.

1. It was not necessary for the petition to allege that the negligence was "gross;" but proof of gross negligence may be given under a general allegation of negligence. (Abbott's Trial Evidence, 583; Newman Pl. & Prac., 413, 415; 2 Chitty's Pleadings, 358, 652; Pierce on Railroads, 393; Turnpike Co. v. Maupin, 79 Ky., 101; Nolton v. Western R. R., 15 N. Y., 450; 2 Thompson on Negligence, 1246; 2 J. B. Moore, 18; Chiles v. Drake, 2 Met., 149; L. & N. R. R. v. Wolf, 80 Ky., 82; Edgerton v. N. Y. R. R., 35 Barbour, 392; 39 New York, 230; L. & N. R. R. v. Case, 9 Bush, 733; Cooley on Torts, 630; R. R. v. Lockwood, 17 Wallace, 382; Steamboat v. King, 16 Howard, 469.)

2. It was proper to submit to the jury the question as to whether there was gross negligence, because this was the case of one employe injured by the negligence of another employe, subordinate, but in the same line of service; and in such cases there can, perhaps, be no recovery, in Kentucky, except where "gross" negligence is shown. (L. & N. R. R. v. Collins, 2 Duvall, 114; L. & N. R. R. v. Robinson, 4 Bush, 509; L. & N. R. R. v. Filbern, 6 Bush, 576.) The degree of the negligence is a question of fact for the jury. (2 Duvall, 115; 5 Ky. Law Reporter, 156.)

3. The facts showing Mitchell's right to recover having been expressly found in his favor by the jury, their findings, in answer to the special questions, will not be set aside unless they are shown to be "so palpably and flagrantly against the evidence as to strike the mind at first blush" as improper. (Salmosa v. Webb, 12 B. M., 868; Turnpike v. Stuart, 2 Met., 122; Moore v. Foster, 10 B. M., 256; Page v. Carter, 8 B. M., 172.)

4. Even though this court would have found the facts differently, yet it will not disturb the verdict of the jury, approved by the court below, before whom the witnesses appeared, unless the finding appear to be so glaringly and flagrantly against the evidence that it would seem unconscionable to permit it to stand. (Becker v. Crow, 7 Bush, 200; Moore v. Foster, 10 Ben. Mon., 256; Varble v. Bigley, 14 Bush, 698; 2 Bibb, 42; 4 Bibb, 194.)

5. The reckless action of the conductor, in sending Mitchell between the cars, and not permitting the train to stand until the coupling was completed, and in giving the signal to start and causing it to move when he saw that Mitchell was still between the cars, and before Mitchell had reasonable time to get out, was, in itself, gross negligence. (L. & N. R. R. v. Collins, 2 Duvall, 115.)

6. The court below instructed that "gross neglect is the absence of any care whatever." This was at least as favorable to the railroad company as it was entitled to; the usual definition of gross negligence being the want of slight care. (L. & N. R. R. v. McCoy, 81 Ky., 412; R. R. Co. v. Herrick, 13 Bush, 127.)

7. The jury having found that the negligence was "gross," the plaintiff was entitled to recover exemplary damages. (L. & N. R. R. v. McCoy, 81 Ky., 403; Herrick v. R. R. Co., 13 Bush, 127; Central Ky. R. R. v. Dills, 4 Bush, 593; Brenner v. Renner, 6 Ky. Law Reporter, 512; 48 New Hamp., 304; 44 Miss., 466; 36 New Hamp., 9; 18 Texas, 228; 3 Head, 530; 13 Iowa, 128; 4 Greene, Iowa, 555; 31 Miss., 156; 3 Colorado, 129; 48 Ala., 15.) The court below, however, confined him to strictly compensatory damages.

8. The verdict of ten thousand dollars was not excessive; as the evidence showed gross negligence, great mutilation, imminent and long continued danger of death, gangrene, an opium habit formed, amputa-

Lou. & Nash. R. R. Co. v. Mitchell.

tion of the leg, continuously painful and unhealed extremity, and disability to earn a livelihood or enjoy life. (2 Sedgwick on Damages, 653; Berg v. Chicago R. R., 50 Wis., 419 ($11,000); L. & N. R. R. v. Fox, 11 Bush, 495 (compromised at $14,999.99); Houston R. R. v. Randall, 50 Texas, 255 ($12,000); Schultz v. R. R. Co., 46 N. Y., Superior Ct., 211 ($15,000); Choppin v. New Orleans R. R., 17 La. Annual, 19 ($25,000); Campbell v. Portland Co., 62 Maine, 552 ($9,500); Beppe v. C. & P. R. R., 58 Iowa, 593 ($9,000); Walker v. Erie R. R., 63 Barbour, 260 ($20,000); Barksdell v. New Orleans R. R., 23 La. Annual, 180 ($15,000); Boyce v. California Stage Co., 25 Cal., 460 ($16,500; Belair v. Chicago R. R., 43 Iowa, 662 ($11,000); Collins v. Council Bluffs, 32 Iowa, 432 ($10,000); Porter v. Hannibal R. R., 71 Mo., 66 ($10,000); Harold v. N. Y. R. R., 31 Supreme Ct., R., N. Y., 184 ($30,000); Atchison R. R. v. Moore, 31 Kansas, 197 ($10,000); C. & N. R. R. v. Jackson, 55 Ill., 492 ($18,000); Shaw v. Boston R. R., 8 Gray, 45 ($22,500); Fair v. London & N. W. R. R., 21 Law Times, 326 ($26,250).

9. The appellate court will hesitate to set aside any verdict for damages for personal injury as excessive; and will only do so where it is glaringly excessive and appears at first blush to have resulted from passion or prejudice. The law favors the presumption that the jury are honest, and that their verdict is fair. (Graham on New Trials, 452; 9 Johnson, 45; Civil Code, section 340; 2 Sedgwick on Damages, 653; Letton v. Young, 2 Met., 560; Danville Turnpike v. Stewart, 2 Met., 122; L. & N. R. R. v. Fox, 11 Bush, 496.)

10. It is not reversible error that the special questions to the jury were so shaped by the court that it was possible for the jury to discover whether, in answering them, the result would be favorable to the one party or the other. All questions that are intelligible are liable to that criticism. The questions in this case were not unnecessarily suggestive or leading. (Empire Coal Co. v. McIntosh, 6 Ky. Law Rep., 634.)

11. The court below properly refused to put to the jury a special question as to whether the injury resulted from "accident." The issue was not whether it was an accident, but whether there was or was not negligence; and it would have been surplusage, impertinent and misleading to have submitted such a question to the jury.

12. It was not reversible error to admit evidence that Mitchell had a wife and children. Such evidence is admissible to show his condition in life, and how much his permanent impairment to earn a support had injured him, and to show grounds for his mental suffering. (Winters v. Hannibal R. R., 39 Mo., 468; Minick v. Troy R. R., 26 Supreme Court R. (N. Y.), 255; McNamara v. King, 2 Gilman (Ill.), 432; Caldwell v. Murphy, 11 New York, 416; Malone v. Hawley, 46 California, 409; Caldwell v. Murphy, 1 Duer, 233; Gaither v. Blowers, 11

Maryland, 536; Simonson v. Chicago R. R., 49 Iowa, 87; Central Pass. R. R. v. Kuhn, 86 Kentucky.)

13. If such evidence is not admissible in cases of ordinary negligence, and of merely compensatory damages, it was not reversible error to admit it in this case, where the negligence being gross, exemplary damages should properly have been allowed. Evidence of the plaintiff's family is always held admissible in cases for exemplary damages. (L. & N. R. R. Co. v. Mahoney, 7 Bush, 238; Chicago v. O'Brennan, 65 Illinois, 163; Coal R. Co. v. Tipton, 5 Ky. Law Reporter, 774.)

14. Mitchell's petition expressly alleged, as special damages, that he had a wife and children dependent upon him for support. Even if ordinarily inadmissible, the evidence was admissible under that allegation of special damage. (2 Rhorer on Railroads, 1099; 1 Sutherland on Damages, 742 to 746; Laing v. Colder, 8 Pa. St., 481.)

15. Even if it was error to admit the proof that plaintiff had a dependent family, still, the court by its instruction as to the ground and measure of damages, having expressly limited the jury to the items they should consider and the elements they should enter into their calculations, and having thereby excluded from their consideration the fact of the family, the judgment will not be reversed. (Code, section 134; Baltimore R. R. v. Shipley, 31 Maryland, 368; Central Pass. R. R. Co. v. Kuhn, 86 Ky.)

JUDGE HOLT DELIVERED THE OPINION OF THE COURT.

The appellee, Robert S. Mitchell, while in the employ of the appellant as a brakeman, and when engaged in the hazardous work of coupling some freight cars in the presence of, and under the direction of the conductor, was caught by the wheel of one of them, and his ankle and foot so crushed that it had to be amputated. His theory as to the manner of the injury is, that after making the coupling, and before he had time to get from between the cars, there was a new movement of the train under the direction of the conductor, by which he was knocked down and injured. The company, upon the other hand, claim that there was no new movement of the train; that it backed slowly and properly to the car that was to be coupled to it; that the appellee went

between them and made the coupling, and then, instead of coming out at once, walked between the two cars for three or four steps as they continued to go backward some six or eight feet from the force of the movement that was necessary to make the coupling, and in this way was caught and injured.

The company now object to the judgment of ten thousand dollars, that was rendered upon the special verdict, upon several grounds.

The petition, after setting forth the manner and extent of the injury, avers that "the said action of said defendant's conductor in charge of said train, and the action of defendant in regard to said operating of said train, was negligent and careless, and the defendant was guilty of negligence, and the said injury to the plaintiff occurred by reason of the negligence and want of reasonable care on the part of defendant, and without any fault of the plaintiff."

The degree of the imputed negligence is not stated, at least in express language. Waiving the question whether this may not be done, and whether it is not done in this instance, by the statement of the manner of the injury, we are of the opinion that the use of the generic word "negligence" in the pleading, in an action of this character, is sufficient without averring its degree.

This is not an action under the statute for a killing by "willful" neglect. If it were, it would have been necessary, inasmuch as the statute creates and defines the injury, to allege that the negligence was willful; but it is one at common law for negligence. In such a case, the degree, whether willful, gross or ordinary,

need not be stated. It is a matter of proof, and not of averment. It is said in Chitty, that a general averment of negligence authorizes proof of gross negligence. (2 Chitty on Plead., *358, note *e*.)

In Abbott's Trial Evidence, page 583: "Gross negligence may be proven under a general averment of negligence."

Another writer uses this language: "The declaration must aver the negligence or default of the company; but it need not describe the kind of negligence, or particular acts which constitute the default, or the names or positions of the servants by whose fault the injury was inflicted." (Pierce on Railroads, page 393.)

Newman in his work on Pleading and Practice, page 415, says, in substance, that where a statute creates and defines an injury by neglect, its particular degree must be averred in the language of the statute or in equivalent words; but that in other cases the general allegation of negligence will be sufficient, as it "in general includes gross as well as ordinary negligence."

Many cases might be cited in support of these textwriters. Among them are Nolton v. Western Railroad Corporation, 15 N. Y., 444, and Turnpike Company v. Maupin, 79 Ky., 101.

The last-named case was for an injury sustained by reason of a defect in a bridge of the company, and the court in its opinion says: "The allegation of negligence is sufficient to entitle the plaintiff to recover in an action like this for any degree of culpable negligence that may be established by the evidence."

Why should not the general allegation of negli-

gence authorize proof of gross negligence, where its existence is necessary to a recovery, equally with evidence of slight or ordinary neglect in a case where it is sufficient? Each are but subdivisions of it, and equally embraced by the term.

There is some evidence that the injury to the appellee resulted from gross neglect; the pleading authorized its admission, and as its existence was necessary to a recovery, the question was properly submitted to the jury whether the injury was thus caused.

The company contends that the interrogatories submitted to the jury were suggestive, and calculated to induce responses favorable to the appellee; that the court improperly refused to let them say whether the injury resulted from an accident which could not have been guarded against by the exercise of ordinary prudence upon the part of the train men; that it failed to inform them that the burden rested upon the appellee not only to show the company's neglect, but his own freedom from any negligence; that some of the material findings are unsupported by the evidence, and that the damages awarded are excessive, resulting in part at least from the improper admission of evidence that the appellee had a family.

The jury in answer to the interrogatories found that the appellee, when coupling the cars, was acting under the orders of the conductor; that when the coupling was made there was a momentary check of the train, but that it was in motion when the appellee was hurt, and that the conductor, by signal, caused the train to move on before the appellee had reasonable time to get from between the cars · that the gross negligence

of the conductor in controlling the train caused the injury, and that he failed to use such caution as an ordinarily prudent person would have used under like circumstances; that the exercise of ordinary care by the appellee would not have avoided the injury, and that ten thousand dollars in damages would reasonably compensate him for the mental and bodily suffering, and the impairment of his capacity to labor and enjoy life arising from it.

It is insisted for the company that the findings, that there was a new movement of the train; that the injury resulted from gross negligence upon the part of the conductor, and that the exercise of ordinary care by the appellee would not have averted it, are altogether unsustained by the evidence. Whether this is so, and whether the verdict is so excessive as to warrant the intervention of an appellate tribunal, are the main questions to be considered.

The special findings of a jury, like a general verdict, can not be disturbed upon the ground that they are against the weight of the evidence, unless they are flagrantly so.

The appellee testified, in substance, that by the direction of the conductor, and in his presence, he went between the cars to make the coupling; that after doing so, and before he had time to get out, he was injured by a new movement of the train. If this be true, the conductor was certainly chargeable with gross negligence. He was immediately present; he was controlling the train; he knew the appellee had gone between the cars by his orders to make the coupling, and that a new movement of the train would

imperil his life.    Under such circumstances it was
his duty to see that it did not take place.    Certainly,
the absence of slight care in the management of so
dangerous an agency as a railroad train is gross negli-
gence.    The conductor would not, for fear of injury
to his own person, have permitted a new movement
of the train, if he had occupied the appellee's posi-
tion.    To permit it under the circumstances was an
absence of all care.    It is true several other wit-
nesses testify that there was no new movement of the
train, but that merely the motion of the train neces-
sary to make the coupling carried it backward a few
feet.    In fact, we are inclined to think that some of
the findings are against the weight of the evidence,
as it appears to us in the record; but they are the
conclusions of twelve men who heard and saw the
witnesses; and we can not say that they are flagrantly
so, especially in view of the fact that they have been
approved by the trial judge, before whom the wit-
nesses also testified.

The evidence fails to show that the negligence,
which must be imputed to the company, was accom-
panied by any act of willfulness.    The jury, however,
found it to be gross; and this authorizes the finding
of exemplary damages.    (Railroad Company v. Mc-
Coy, 81 Ky., 403.)

The jury were, however, restricted by the court to
those which are compensatory only; and of this the
company can not, of course, complain.    The amount
allowed seems large.    It is so.    The fact, however,
that it appears high to us does not authorize a rever-
sal.    We are not acting as a jury, and it is only when

it is glaringly excessive, and appears at first blush to have resulted from passion or prejudice, that we can interfere. The power should be sparingly exercised, and only in extreme cases. This is the policy of the law, and reasonably and necessarily so. It is difficult, indeed impossible, to measure with mathematical certainty the extent of some of the elements of compensatory damages. The law has confided the duty to the opinion of a jury as the best means of arriving at their extent even approximately, and every verdict should be regarded *prima facie* as the result of the exercise of an honest judgment upon their part. Any other rule would soon burden this court with numberless appeals upon this ground.

The evidence shows that the appellee has suffered beyond estimate. For weeks his life hung in the balance. He is a cripple for life ; doomed to hobble about during the balance of his days, disabled from earning a living, at least at his accustomed employment, if not altogether, and in large measure deprived of the enjoyment of life. In estimating the damages for all this different minds may well arive at different results ; and in view of the well established rule upon this subject the verdict of the jury cannot be disturbed upon the ground that it is excessive.

The interrogatories objected to are in form as follows :

"4. Did or not the conductor (Sterling), whilst the plaintiff was coupling the cars, and before he had reasonable time to complete the same and come from between the cars, cause, by order or signal, the train to start in motion, and thereby catch the plaintiff between the cars, and cause the injury to the latter?"

"Answer. We of the jury say that the conductor did, by signal, cause the train to move on before the plaintiff had reasonable time to come from between the cars."

"5. Was or not the injury to the plaintiff caused by the negligence or want of care on the part of the conductor (Sterling) in controlling or directing the movements of the train at the time?"

"Answer. We of the jury say, yes it was."

"5½. If they answer question five in the affirmative, then they will say whether such neglect on the part of the conductor was gross neglect or ordinary negligence?"

"Answer. We of the jury say it was gross negligence."

"5¾. Did or not the conductor (Sterling), at the time of plaintiff's injury, fail to use that kind of care and caution which an ordinarily prudent and skillful person engaged in like business would have observed under similar circumstances?"

"Answer. We of the jury say, he did fail."

"6. Could or not the plaintiff, by the use of ordinary care and prudence on his part at the time, have avoided said injury?"

"Answer. We of the jury say, he could not."

"7. If the jury answer question No. 4 in the negative, question 5 in the affirmative, question 6 in the negative, and say in answer to question No. 5½ that said conductor was guilty of gross negligence, then they will consider, and say in answer to this question, what sum in damages, within that claimed, will reasonably compensate plaintiff for the injuries sustained by him,

because of said negligence; the bodily and mental suffering (if any) resulting directly from said injuries, and the impairment of capacity (if any) to labor and enjoy life, resulting also from said injury. If, however, said questions 4, 5 and 6 are not answered as herein set forth, then this, the seventh question, need not be answered.

"Answer. We the jury find for the plaintiff in the sum of ten thousand dollars."

It is urged that they pointed out to the jury how to find a verdict that would sustain a judgment for the appellee. It may be equally said that they informed the jury how to find, so as to authorize one for the company. As to the last interrogatory, it may be said that it would be difficult, if not impossible, to frame a hypothetical question so that a jury of ordinary intelligence would not know how to find, to authorize a judgment for the one party or the other.

Certainly it would be impossible to submit interrogatories of such a form that the attorneys could not point out to the jury how they desired them to answer them to authorize a judgment for their client. If such a thing were possible, the jury would be unable to act intelligently. We must presume that they hunt for the right and not the wrong; and in our opinion the interrogatories are not open to the objection that they are improperly leading and suggestive.

The court, by its instructions, properly defined what would constitute gross and ordinary negligence upon the part of the conductor, and what would be ordinary care upon the part of the appellee; and the interrogatories must be read in the light of these instructions.

The jury were not only required to find specially whether the appellee had been guilty of any negligence, but were informed that the burden of proof rested upon him, and that he must make out his case by the weight of the testimony. It was not a question of accident under the pleadings, but whether the company had been guilty of gross neglect, or the appellee of such negligence, that but for it the injury would not have happened. This was the issue, and it was proper to shape the interrogatories with a view to its determination, and not of some question not presented.

In the case of the L., C. & L. Railroad v. Mahoney, 7 Bush, 238, evidence that the injured party had a family was held to be competent. That was an action, however, under the statute, for a killing by willful neglect. In actions for injuries for neglect not based upon such a statute, and where compensatory damages only are allowable, the authorities are to some extent conflicting as to the competency of such evidence.

In the case of Winters v. Railroad Company, 39 Mo., 468, it was decided that it was competent to prove that the injured party had a family, not as a fact in itself authorizing damages, but as showing his condition and situation in life by way of estimating the damages done to him. Upon the other hand, this was denied in the case of the Railroad Company v. Powers, 74 Ill., 341, upon the ground that it would tend to unduly enhance the damages and beyond compensation; that the only question is, how much has the plaintiff been damaged; and if such evidence be admissible, then it would be equally proper to show that the wife was blind, or the daughter an invalid.

It was, however, held by the Supreme Court of the United States in the case of the Pennsylvania Company v. Roy, 102 U. S., 451, that evidence as to the poverty of the injured party, or whether he had a family, was inadmissible where he was entitled to compensatory damages only. This left the question open, so far as that court is concerned, in a case where an injury results from gross neglect, unaccompanied by willfulness or acts of aggravation.

In the case now in hand the petition avers that the appellee has a family. It is specially pleaded.

It is held in some cases, as in Laing v. Colder, 8 Penn. St., 479, that matters not naturally attendant upon the act, but proper by way of special damage, as that the injured party is the head of a family, may be proven, if specially pleaded. Mr. Rorer, in his work or Railroads, volume 2, p. 1099, appears by the citation of authority to support this view.

It is not, however, necessary in this case to decide whether such evidence is competent in a case where an injury results from gross neglect, which authorizes exemplary damages, but which is unaccompanied by any act of willfulness or oppression, or whether it is admissible in support of such matter when specially pleaded, because, in this case, the jury were, by the seventh interrogatory, expressly restricted in estimating the damages to such sum as would "reasonably compensate plaintiff for the injuries sustained by him because of such negligence; *the bodily and mental suffering* (if any) *resulting directly from such injuries; and the impairment of capacity* (if any) *to labor and enjoy life resulting also from said injury.*"

This question enumerated the elements for the calculation of the damages, thereby withdrawing from the consideration of the jury the evidence as to the family as effectually as if it had been done by express instruction.  (Railroad Company v. Shipley, 31 Md., 368.) It was not a general verdict; but the finding as to damage was upon a special question, that pointed out to the jury what they should consider in fixing it.

We cannot presume they did not follow it; and if an erroneous step or instruction in a case be corrected by a subsequent instruction or otherwise, no ground for reversal exists.

Judgment affirmed.