## Borderland Coal Company v. Edwards.

(Decided January 15, 1918.)

### Appeal from Pike Circuit Court.

1. **Negligence—Contributory Negligence—Question for Jury.**—A chain carrier, directed by the mine engineer to wait until his return, placed himself in front of a loaded coal car on a steep grade held in position by a prop, which the engineer brushed against or stumbled over upon his return, after which the car started and injured the chain carrier. In an action for damages for his injuries, the chain carrier is held to have been in the line of his duty and the question of his contributory negligence was for the jury.

2. **Master and Servant—Negligence—Fellow Servant.**—In such action, the mine engineer held to be a fellow servant of plaintiff and his

superior in authority, and for his injuries plaintiff could recover for the gross negligence of the engineer.

3.  Master and Servant—Negligence—Trial—Instructions.—In such action, an instruction making defendant's liability to depend on willful rather than gross negligence was error.

4.  Master and Servant—Negligence—Proximate Cause—Trial—Instructions.—In such action, instructions held erroneous in failing to define and submit the questions whether the proximate cause of the injury was the negligence of the defendant in propping the car or of the mine engineer in knocking the prop from it.

5.  Negligence—Pleading.—An allegation of negligence includes gross, as well as ordinary, negligence.

J. J. MOORE, JAMES P. WOODS and SAMUEL D. STOKES for appellant.

No brief for appellee.

Opinion of the Court by Judge Clarke—Reversing.

On September 25, 1913, the appellee, who was plaintiff below, was injured while working for the appellant in its mine in Pike county, Kentucky. In this suit for damages for the injuries thus sustained, he recovered a judgment for $1,200.00, from which the defendant has appealed.

At the time of the accident, plaintiff, who was then fifty-five years of age and had thirty years' experience in mine work, was acting as chain carrier for the mine engineer, Mr. Smith, in making some measurements in the mine. In the entry, where these measurements were being made, the floor of the mine was on an incline of about ten feet to each one hundred lineal feet. Near the top of this incline was a loaded coal car, held in position by a piece of an old tie some three or four feet long and about three or four inches thick, which was set at an angle to a tie in the track from the front corner of the car. A few minutes before the accident, Mr. Smith told the plaintiff to wait where he was, which was in the vicinity of the car, until he made some measurements a short distance away. While waiting for Mr. Smith to return, the plaintiff sat down on his haunches in the middle of the track with his back against the bumpers on the front end of the car and engaged in conversation with the mine boss, a Mr. Johnson, about what work he was to do after he got through helping the engineer with the work he was then doing. When the engineer returned to where the plaintiff was seated he brushed or stumbled against

the prop that was holding the car in place, which caused the prop to fall, and the car started down the grade pushing plaintiff in front of it. A coal loader, who was near and saw the car start, jumped upon it and set the brake; but that did not stop the car, nor could he, with the assistance of the mine boss and the engineer stop the car. The plaintiff caught hold of the front end of the car and held his body off the ground so that the car did not run over him, but he was dragged along in front of and under the car for about forty-five feet before it was finally stopped through the combined efforts of the three employes, who witnessed the accident, and by the leg of the plaintiff dragging on the rail in front of the wheel and coming in contact with a piece of timber.

After plaintiff was removed from under the car, he was taken to his home, attended by the mine physician, and in about six weeks was able to go to Williamson, West Virginia. Upon his return home that night, he fell off the front porch of his home and dislocated his right arm at the shoulder. This fall, he claims, was occasioned by the injured leg giving away from under him, but he admitted that he had been drinking some that day and may have brought home some whisky for the "old lady," but that he was not drunk.

In about four months after his injury in the mine he returned to work for the defendant at the same wages he received before his injury, and his testimony shows his earning capacity has not been diminished. During the four months he was laid up from the two accidents referred to above, he was paid by the defendant one-half his regular wages and was not charged rent for the defendant's house in which he lived. The physician who attended him testified that the injuries to his leg and body were painful, but that the muscles were not injured; that the injury was not permanent, being simply a flesh wound caused largely by the skin being burned from the leg by friction; and to restore the lost skin about six square inches of new skin furnished by his son was grafted upon the wound.

Plaintiff based his right to recover upon the alleged negligence of the defendant in failing properly to secure the car upon the incline so that it could not get away and run down the grade. The defendant denied any negligence as to the way in which the car was propped, and insisted that a peremptory instruction should have

gone in its favor upon the ground that the evidence showed that the plaintiff was not in the line of his duty at the time of the accident, and that the accident could not have happened except for his negligence in sitting down in the middle of the track in front of the car on a steep grade.

Plaintiff admits he knew of the grade and that he could have waited for the return of Smith upon either side of the track, as well as in the center of it; but we do not think this, as a matter of law, defeats his right of recovery. Under order of his superior, he was waiting a few minutes at the place where he was told to wait; the car was at the end of the track; so that there was no danger from passing trains or cars. It admittedly was the duty of defendant to have secured the car on the track for the protection of plaintiff and its other employes. Plaintiff was talking to the mine foreman who, evidently, did not consider plaintiff's position one of peril, as he also was either standing or sitting at the front end of the car. We think it was a question for the jury whether or not this act of plaintiff was, under the circumstances, contributory negligence; and it was so treated by the court.

Nor do we think that plaintiff was not engaged in the line of his employment at the time of the accident, although he was led to say upon cross-examination that, at that time, he was "engaged in other business," but it is quite apparent that what he meant was that, at the time of the accident, he was not actually engaged in surveying but was engaged in a conversation with the mine foreman about another matter. Nevertheless, he was, at the time, in the line of his duty, doing what Smith had told him to do, waiting for Smith to make a measurement a short distance away, in which his assistance was not needed; and the only question was whether he did that in a negligent manner, thereby contributing to his own injury, and this was for the jury.

It is also argued that the proximate cause of the injury was the negligence of Smith in knocking the prop from in front of the car, and that, as he was a fellow servant superior in authority to plaintiff, the defendant was not liable unless the negligence was gross. This is the doctrine in this State. Illinois C. R. Co. v. Coleman, 59 S. W., 13 Ky. L. R. 878, and many others. And the court in instruction No. 4 evidently meant to recognize

this doctrine, but made defendant's liability depend upon willful rather than gross negligence of Smith, which was error. Instruction "H," offered by defendant, more nearly presents this question correctly and should have been given with one modification only, which should also be made in instruction No. 1 given; and that is, both of these instructions should have presented more clearly the idea of proximate cause, and proximate cause should have been defined so that the jury could have decided which was the proximate cause, the negligence of the defendant, if any, in propping the car, or the act of Smith in knocking the prop out, if he did so.

If the jury should find the act of Smith in knocking down the prop to be gross negligence and the proximate cause of the accident, plaintiff is entitled to recover, although his petition alleged only negligence in general terms upon the part of the defendant in failing to secure the car on the incline so as to prevent its running down the grade and against plaintiff, for the allegation of negligence includes gross as well as ordinary negligence. Newman's Pleading & Practice, section 324d; L. & N. R. Co. v. Mitchell, 87 Ky. 327.

Instruction No. 2 on the measure of damages is erroneous, in that it permits a recovery for loss of time, which is special damages, and was not pleaded.

Defendant most earnestly insists the damages awarded, $1,200.00, for suffering and pain, from a flesh wound with no permanent injury shown, are so excessive as to warrant a reversal, and, under the circumstances, the amount does seem excessive, but, as a reversal will be ordered because of errors in the instructions, we do not now pass upon the question of whether or not the damages are so excessive as to warrant a reversal.

Wherefore, the judgment is reversed and cause remanded for another trial consistent herewith.