CHIEF JUSTICE HARDIN
delivered the opinion oe the court.
This appeal is prosecuted for the reversal of a judgment rendered in favor of the appellees, Philip Gaernett, sr., for one hundred dollars, and' of Philip Gaernett, jr., for two hundred dollars, upon their counter-claims against the appellant, severally pleaded in an action brought by him against them for alleged assault and battery.
The essential facts, as elicited on the trial, were that on the occasion of two marriages, which occurred on-the night of the 30th day of June, 1870, at the house of the elder Gaernett, in the city of Louisville, the festivities and amusements which are usual at wedding-parties were then being enjoyed by the family and guests of Gaernett, when a quarrel occurred between a son-in-law of his named Young and a man named Siebert, in which the latter received some bodily injury. Siebert then left, and meeting the appellant some distance from the house told him of the injury Young had inflicted on him, and requested the appellant, who was a policeman of the city, to arrest Young; and thereupon appellant proceeded to and entered the house of Gaernett, and there attempted to arrest Young without warrant, judicial order, or other authority or color of authority than such as pertained to his office as *223 a policeman. It appears that Gaernett, sr., interposed in behalf of Young; but whether he did so for the purpose of forcibly resisting the arrest or importuning the officer to desist and leave the house is not certainly shown. But, however this may have been, it is proved that at that juncture appellant struck him a severe blow on the head with a “policeman’s club,” whereupon the appellant was struck and knocked or thrown down by the younger Gaernett, the son of P. Gaernett, sr.; and, in the language of one of the witnesses, “the light was then put out and a general fight followed,” in which another policeman, who had entered the house, took part, firing a pistol and wounding young Gaernett in the arm, and then rescuing and removing the appellant, who was at the time being beaten by one or both the Gaernetts, whom the two policemen afterward arrested and lodged in a station-house.
Upon this state of the facts the court was asked, at the instance of the plaintiff, to instruct the jury in substance and effect that as a policeman he had a right, with or without a warrant, to arrest persons guilty of offenses against the law; and that if he had information that Young had committed an assault on Siebert and was in the house of Gaernett, he had a right to enter said house for the purpose of arresting him, and that • Gaernett had no right to resist him or interfere with him while doing so; and if while he was making such resistance or interference the defendants beat and bruised the plaintiff, the law of the case was for him, and the jury should r so find. But the court refused to so instruct the jury; and, on( the contrary, instructed them in effect that it was unlawful for i the plaintiff to arrest or attempt to arrest Young unless he ; had committed a breach of the peace or other misdemeanor jin the plaintiff’s presence, or the latter had reasonable grounds to believe that Young had committed a felony, and that the facts communicated to the plaintiff by Siebert did not constitute *224 such grounds; that Gaernett had a right to resist the attempted arrest of Young while a guest in his house, using no more force than was necessary for that purpose; and if in doing so he was so assaulted by the plaintiff as to put him in danger of great bodily harm, his said son had a right to protect him by the use of such force as was necessary for that purpose; and if, in view of these rights of the defendants, they or either of them were wrongfully assaulted and beaten by the plaintiff, the jury should find for them or either of them so beaten upon his counter-claim. ^
Having thus in a condensed form sufficiently indicated, as we think, the material rulings of the court which are complained of as grounds of reversal, we deem it only necessary particularly to consider and determine what we conceive to be the main question involved — whether the appellant, being a policeman, had a right by virtue of his authority as such, on being informed by Siebert that Young had assaulted him, to go without warrant or judicial order into Gaernett’s house and there arrest Young.
This question does not derive its chief importance from the injuries complained of or the redress which was adjudged to the appellees in this case, but in our opinion the interests of society to be affected by its judicial determination render /its correct solution far more important. The duties of policemen and other peace-officers are of a peculiar character, and / such as must often be discharged in emergencies not easily anticipated for the protection of individuals and the preservation of the peace. They embrace a service of great and perhaps increasing importance in this growing and progressive country, and certainly their efficient exercise ought not to be further trammeled than may be reasonably required by legal Vand constitutional restraints for the security of the rights of citizens. By the second subdivision of section 33 of the Criminal Code of Practice the power of a peace-officer to *225 make an arrest without a warrant is clearly defined, as “ where a public offense is committed in his presence, or where he has reasonable grounds for believing that the person arrested has committed a felony.” The restrictions implied in this provision of the Code upon the power of the officers to make an arrest without warrant is not only in substantial accordance with the fundamental law of this state, but with the weight of common-law authority on the subject. (4 Blackstone’s Commentaries, 292; 1 Hilliard on Torts, 220.)
It is argued, however, for the appellant, in effect, that by part of section 40 of the charter of Louisville he had authox’ity to an’est Young without a warrant, and consequently to go into Gaernett’s house for that purpose on the informatioxx of Siebert, although no offeixse had been committed in his presence, and no grounds existed for believing that a felony had been committed. The provision of the charter referred to is as follows: “Policemen may, with or without a warrant, arrest persoixs guilty of offenses against the laws or ordinances of the city.” We do not regard this enactment as necessarily conflicting with the general law which defines and limits the power of the arresting officer; bixt if we did so construe it, we should hesitate to decide that it was not an infringement of the constitutional guaranty of security to the people “in their persons, houses, papers, and possessions against unreasonable seizures and searches.”
Looking to the wrongs, injuries, and oppressions which might and, as we think, would often result from investing a mere peace-officer with unlimited authority to ai-rest any person, and place him in custody upon the unsworn complaint of another or on the faith of some rumor to which the officer might give credence, we can not think that the legislature in enacting the charter of Louisville intended to, even if it could constitutionally, have gone further than to empower peace-officers to make arrests without warrant for offenses *226 committed in their presence, and, upon reasonable grounds of belief, for alleged felonies, whether committed in the officer’s presence or not.
With reference to the question under consideration we regard the action of the court below as in accordance with the foregoing views, and we perceive no error in any of the rulings complained of for reversing the judgment.
Wherefore the judgment is affirmed.