# DECISIONS

OF THE

# COURT OF APPEALS OF KENTUCKY

## SEPTEMBER TERM, 1909.

CASE 1,—INDICTMENT AGAINST FRED MARCUM FOR MUR-
DER—Oct. 29, 1909.

## Commonwealth v. Marcum.

$\frac{135}{138}$ $\frac{1}{483}$

Appeal from Lawrence Circuit Court.

J. B. HANNAH, Circuit Judge.

After a mistrial the Commonwealth certified certain questions to the Court of Appeals.

1. Searches and Seizures—Misdemeanors—Arrest Without Warrant—Statutes.—Ky. St. Sec. 806, makes it an offense, punishable by a fine and imprisonment in the county jail, for any person while riding on a train in the hearing or presence of other passengers, and to their annoyance, to use obscene or profane language, or behave in a boisterous or riotous manner, and makes it the duty of the conductor either to put such person off the train, or to give notice of violation of the section to some peace officer at the first stopping place where such officer may be, who may arrest the offender without a warrant. Held, that such act was valid, and not objectionable in so far as it authorized such arrest, as violating Const. Sec. 10, providing that the people shall be secure from unreasonable searches and seizures.

2. Carriers— Passengers—Ejection—Disorderly Conduct.—Ky. St. Sec. 806, providing for the ejection of passengers on railroad trains guilty of disorderly conduct or obtaining or attempting to obtain money or property from any person by any game or device, etc., is reasonable and valid.

3. Homicide—Arrest—Misdemeanors—Use of Force.—An officer having a right to arrest for a misdemeanor may use such force, if resisted. as is necessary or reasonably appears to the officer necessary in the exercise of a sound judgment to overcome the resistance and make the arrest, but he may not, while the resistance is not forcible, wantonly shoot or injure the person sought to be apprehended.

4. Homicide—Defenses — Resistance—Force—Instructions.—An instruction that it was a public offense for a passenger to behave boisterously in the presence of other passengers, and that it was the conductor's duty either to eject the offending person or give notice to a peace officer at the first stopping place, and that it was the peace officer's duty to arrest the offender and carry him to the most convenient magistrate of the county, and in making the arrest the officer could use such force as was necessary, even to taking the life of the offender, but that he should not use unnecessary violence, nor shoot the offender unless the arrest could not otherwise be made—was objectionable, as eliminating the necessity that the resistance must be forcible, and the idea that the officer might act on appearances in the exercise of reasonable judgment.

5. Homicide—Execution of Duty—Resistance to Arrest—Instruction.—In a prosecution for homicide, an instruction as to the right of defendant, a city marshal, to shoot one whom a train conductor had requested to have arrested for disorderly conduct in case of resistance to the arrest, held proper.

BYRD & DAVIS, CALLOWAY HOWARD and HOPKINS & HOPKINS for appellant.

JAS. BREATHITT, Attorney General, and TOM B. McGREGOR, Assistant Attorney General, for Commonwealth.

OPINION OF THE COURT BY JUDGE BARKER.

The appellee, Fred Marcum, was jointly indicted with Frank Blevins and James Sizemore by the grand jury of Lawrence county, Ky., charged with the offense of willful murder, committed by shooting John Whittaker with a pistol and inflicting wounds upon him of which he then and there died. The defendants all pleaded not guilty to the indictment,

and, when the case was called for trial, the appellee, Fred Marcum demanded a severance from his codefendants, which was granted him. Thereupon the commonwealth elected to try him first, and a trial was then and there had, with the result that the jury were unable to agree upon a verdict, and were discharged by the court from further consideration of the case.

Afterwards the commonwealth's attorney, as by law authorized, certified the record to this court for the purpose of having adjudicated the propriety of giving instructions Nos. 5 and 6 to the jury, and of the court's refusal to give to the jury instruction No. 1 asked for the commonwealth. The court gave the usual instructions in murder cases, and in addition gave Nos. 5 and 6, which are as follows:

"(5) The court further instructs the jury that it is a public offense for any person while riding on a passenger train, to, in the hearing or presence of the passengers, and to their annoyance, use or utter obscene or profane language, or behave in a boisterous or riotous manner, and it is the duty of the conductor in charge of a train upon which any such offense is committed either to put the person so offending off the train, or to give notice of such offense to some peace officer at the first stopping place where any such peace officer may be, and it is the duty of such peace officer when so notified by such conductor to arrest such offender, and carry him to the most convenient magistrate of the county in which such arrest is made; and in making such arrest such peace officer has the right to use such force as is necessary therefor, even to the taking of the life of the offender, but not the right to use unnecessary violence, nor to

shoot the offender, unless such offender resist such arrest, and such arrest cannot be otherwise made.

"(6) A city marshal is a peace officer of the county in which the city is located of which he is marshal, and if the jury should believe from the evidence that Frank Blevins was the conductor in charge of the train upon which the deceased Whittaker was riding at the time that he was killed, and further believe from the evidence that said Blevins as such conductor, in Lawrence county, Ky., while such conductor in charge of said train and on said run, and before said killing was done, complained to and notified the defendant, Marcum, as marshal of the city of Louisa, Lawrence county, Ky., that the deceased Whittaker had on his (Blevins') train, on said run, committed a public offense as defined in said instruction No. 5, and that as such marshal in the discharge of his official duties in good faith attempted to arrest the deceased, and while so engaged the deceased, with the intent to prevent and with force resisted such arrest and assaulted the defendant, and there appeared to defendant Marcum, exercising a reasonable judgment on the time and under the circumstances, no other safe way to save his life or to protect himself from great bodily harm or to make such arrest than to shoot and kill the deceased, then in such event the jury will acquit the defendant upon the grounds of self-defense or apparent necessity."

The commonwealth tendered to the court, and asked that it be given to the jury, instruction No. 1, which was refused. It is as follows: "It was the duty of the defendant in attempting to arrest the deceased to inform him of his intention to arrest him, and of the offense charged against him, and if the jury believe from the evidence beyond a reason-

Commonwealth v. Marcum.

able doubt that the defendant failed to perform said duties, or either of them, and they further believe from the evidence beyond a reasonable doubt that the deceased did not know the defendant's purpose and the offense charged against him, then the deceased had the right under the law to use such force as was necessary or reasonably appeared to him to be necessary to protect him from danger or death, or great bodily harm then about to be inflicted on him by the defendant."

The facts out of which grew the killing for which the appellant was indicted are as follows: The Chesapeake & Ohio Railroad Company on Sunday, January 11, 1909, ran an excursion train through Lawrence county, Ky., to Cattlettsburg. The deceased, John Whittaker, and his two brothers, Caleb and Frank, with several friends and acquaintances, went on this excursion. When the party reached Catlettsburg, John Whittaker and his friends proceeded to have a good time by getting drunk and visiting houses of prostitution. At one of these, John Whittaker got into an altercation with one of the women in the house, and drew his pistol, flourishing it about in a reckless manner. One of his companions, Sam Robinson, in order to keep him out of trouble, took the pistol from the drunken man, and placed it in his own pocket. The train returned at night, and John Whittaker and his party had with them a suit case containing six quarts of whisky and gin, of which they partook freely, and were in a hilarious and boisterous mood. The conductor, Frank Blevins, warned John Whittaker several times to keep quiet, and not to make a disturbance, and finally said to him: "You have got to cut that out (meaning his boisterous behavior), for I have got a man on this

train who will take you off." He referred to the appellee, Fred Marcum, who was marshal of Louisa. When the train reached Lawrence county, Marcum, at the instance and request of the conductor, Blevins, went into the car where Whittaker and his party were for the purpose of arresting those who were boisterous and unruly. They first arrested Sam Robinson, who, as before stated, had taken John Whittaker's pistol from him in Catlettsburg. In making this arrest they mistook Robinson for Whittaker; they both wearing white hats, and looking something alike. Robinson submitted quietly to the arrest, and went with the officer and conductor to another car, where he explained to them that they were mistaken in the man, and told them that he had taken a pistol from Whittaker to keep him out of trouble. Thereupon the officer released Robinson, and with the conductor went back into the car for the purpose of finding and arresting John Whittaker. Whittaker and his brothers, who had seen the arrest of Sam Robinson, undertook to avoid the arrest of John Whittaker by the following ruse: John left the seat he was occupying, went in the forward part of the car, and on the opposite side of the aisle from where he had been sitting or standing, and took a seat by a little boy; and, in order to conceal him, one of his brothers sat on the arm of the seat, and leaned over John so as to screen him from ordinary observation. This necessitated somewhat of a search by the officer and the conductor, with the result that the conductor, Blevins, finally discovered John, and said to the officer, "Here he is. This is your man," or words to that effect. Thereupon the marshal, Marcum, put his hand upon the shoulder or neck of Whittaker, and said to him: "You must go with me. You are under arrest." There-

upon Whittaker replied: "I haven't done anything, and I will not go." The marshal then said, "Oh, yes; you will," and then gave him a pull or jerk with his hand. Thereupon John Whittaker immediately assaulted the officer, knocking him down, or very nearly knocking him down, and his brothers, and perhaps others at once assaulted the marshal and conductor, Blevins, and a general and free fight resulted, creating the greatest confusion and consternation among the passengers, many of whom left or tried to leave the car. The marshal was badly beaten about the face, the blood running freely from a wound on his head down in his eyes. In the midst of the melee he drew his pistol and shot John Whittaker in the left breast, and he sank into his seat, and there died within a few minutes.

We have not recited all of the mass of testimony that was adduced upon the trial. The evidence for the commonwealth and that for the defendant differs as to the degree of noise or boisterous conduct of Whittaker and his friends, but the evidence for the commonwealth sufficiently shows the facts to be substantially as stated in this opinion. We feel that it is sufficient for the purposes of this case merely to give a general outline of the evidence so that the principles of law certified to us may be properly understood. The arrest of John Whittaker by the constable was under the authority of section 806, Ky. St., which is as follows: "If any person whilst riding on a passenger or other train, shall, in the hearing or presence of other pasengers, and to their annoyance, use or utter obscene or profane language, or behave in a boisterous or riotous manner, or obtain or attempt to obtain, money or property from any passenger by any game, or device, he shall be fined for each offense

not less than twenty-five nor more than one hundred
dollars, or imprisoned in the county jail not less than
ten nor more than fifty days, or both so fined and im-
prisoned; and it shall be the duty of the conductor in
charge of any train upon which there is a person
who has violated the provisions of this section either
to put such person off the train, or to give notice of
such violation to some peace officer at the first stop-
ping place where any such officer may be." The com-
monwealth challenges the constitutionality of the
foregoing statute as being inimical to section 10 of
the Constitution, which provides: "The people
shall be secure in their persons, houses, papers and
possessions, from unreasonable search and seizure.
*  *  *" And in support of this view cite the case
of Jamison v. Gaernett, etc., 10 Bush, 221. In that
case it was insisted that the charter of the city of
Louisville authorized policemen to arrest, with or
without a warrant, persons guilty of offenses against
the laws or ordinances of the city. The court in de-
nying that the charter authorized policemen to make
arrests contrary to the general law of the state said,
after quoting the charter: "We do not regard this en-
actment as necessarily conflicting with the general
law which denies and limits the power of the arresting
officer; but, if we did so construe it, we should hesi-
tate to decide that it was not an infringement of the
constitutional guaranty of security to the people 'in
their persons, houses, papers, and possessions, against
unreasonable seizure and searches.'" And then the
opinion goes on to hold that policemen of the city of
Louisville must make arrests in accordance with the
general law bearing upon the subject. The opinion
in this case is not conclusive of the question of the
constitutionality of the statute we have under

consideration. It may well be doubted whether policemen could constitutionally be authorized to make arrests for violations of municipal ordinances not committed in their presence without a warrant; and there would be ample room for the argument that the granting of such power would be unreasonable within the meaning of section 10 of the Constitution. But that is not the case we have here. The statute we are construing was enacted for the protection of the traveling public—men, women, and children—from unlawful conduct on the part of fellow passengers. If a conductor could not be empowered to forcibly eject a pasenger violating the foregoing statute, or to have the offender arrested as soon as a peace officer could be obtained, then we are not able to see how a railroad corporation could protect its passengers from the unlawful deeds of boisterous or disorderly or drunken persons on the train. Railroad corporations are engaged in the business of carrying passengers for long distances. Their trains ordinarily run through many counties as well as through different states. The passengers are necessarily more or less crowded together in close proximity, and their safety is in a measure at the mercy of each other. If the law-abiding cannot be protected from insult or violence by the lawless, it necessarily follows that traveling by railroad will become essentially a hazardous undertaking, independently of the ordinary dangers of accident or misfortune. The law is a growing science, and the Legislature is constantly engaged in advancing its protecting sanctions so as to safeguard the lives and the liberty of the citizen against outrage and violence. Wherever there is a special need for a new statute to protect the citizen in his rights, then it is the duty of the Legislature

to enact such a statute. It was in obedience to this duty that the statute under consideration was enacted for the protection of the traveling public in their right to be transported in railroad cars free from the danger of insult, outrage, or violence by lawless men.

So much of the statute under consideration as authorized the conductor under the circumstances described in the statute to eject a passenger from his train was recognized and upheld as lawful by this court in the case of Chesapeake & Ohio Ry. Co. v. Crank, 128 Ky. 329, 108 S. W. 276; 32 Ky. Law Rep. 1202, 16 L. R. A. (N. S.) 197.

But the statute not only authorizes the conductor to eject a pasenger who offends against its provisions, but authorizes him to obtain the assistance of a peace officer as soon as he can get into the presence of such an officer and empowers the peace officer upon the demand of the conductor to arrest the offender without a wararnt. This must necessarily be so if the statute is to have any efficient force or effect. The train could not be held at a station until the conductor could go and swear out the warrant for the arrest of the offender. To require this would nullify the statute. Laws are not made for the benefit of criminals, but for the protection of the innocent, and, if the statute was so framed as to require the issuance of the warrant as a prerequisite to the arrest of the violator of the statute, it would enable the guilty always to escape, and thus take from the innocent all hope of protection. The statute is not only constitutional, but it is an exceedingly wise and beneficent law. It puts into the hands of the railroad corporation the power to protect its innocent passengers by authorizing the conductor to eject offenders from

Commonwealth v. Marcum.

his train or to cause them to be arrested by the first peace officer whose services he can secure.

The question as to whether a search or seizure of the person of the citizen is reasonable under the Constitution is a relative one. It might not be reasonable to seize or search the person of a citizen for a misdemeanor where he was at large in the city or country, and where the circumstances would generally be such that a warrant could be secured in advance of the arrest. But it would not be reasonable to require the officers to wait for a warrant if the offense was a felony, because here the gravity of the offense and the importance to the public of the prompt seizure of the criminal overrides the unreasonableness of the search or seizure without a warrant. And so, in the case at bar the circumstances which require the arrest of an offender against the statute are such as to make it reasonable that a peace officer should be authorized upon the request of the conductor of a train to arrest a violator without a warrant and without the offense for which the arrest was to be made being done in the presence of the officer. The law, being a practical science, regards the necessities of the case, the danger to the public, and the opportunity for the escape of the offender, and arranges the remedy so as to protect the innocent, trespassing upon the liberty of the citizen as little as possible in order to secure the protection of the public. No law, therefore, can be considered unreasonable which is necessary to protect the public from violence or outrage at the hands of the lawless. And, if such a law seems to give an undue amount of absolute authority into the hands of the officers having in charge its administration, it must be remembered that this is the price that the people pay for protection; for, after all, gov-

ernment is but the sum total of the natural liberty of
the citizen surrendered up in return for law and or-
der and peace and safety.

We will now consider instructions 5 and 6, given
by the court, and which are objected to by the com-
monwealth.   In the case of Stevens v. Commonwealth,
124, Ky. 32, 98 S. W. 284, 30 Ky. Law Rep, 290, we
had occasion to examine the question as to the force
which a peace officer is authorized to use in making
an arrest where the party is charged with a misde-
meanor and in the opinion in that case the decisions
by our court are reviewed, as well as the text-books
bearing upon the subject, and from the principles
there enunciated we have  never  departed.  In the
opinion it is clearly stated that an officer having a
right to arrest for a misdemeanor, if he be forcibly
resisted, may use such force as is necessary, or rea-
sonably appears to the officer necessary in the exer-
cise of a sound judgment, to overcome such force
and to make the arrest.  But he has not the right,
where the resistance is not forcible, to wantonly
shoot or injure the person charged with a crime.  In
the case cited an instruction was formulated which,
with slight changes to meet the necessities of the
varying facts, would have well served for the instruc-
tion in this case.  Instruction No. 5, given by the
court, is objectionable, in that it does not present the
idea that the resistance of the offender to the pro-
posed arrest must be a forcible resistance.  Nor does
it present the idea that the officer may act upon what
appears to him to be necessary in the exercise of a
reasonable judgment.  Therefore No. 5 should be
modified so as to make it read, commencing with the
last semicolon, as follows: "* * * And in making
such arrest, such peace officer has the right to use

Commonwealth v. Marcum.

such force as is reasonably necessary therefor, if the arrest be forcibly resisted, even to the taking of the life of the offender but he has not the right to use unnecessary force or violence, nor to shoot or otherwise injure the offender unless such offender forcibly resists the arrest and the arrest can not be otherwise made, or it appears to the officer, in the exercise of a reasonable judgment, that it can not be otherwise made."

Instruction No. 6 is not subject to criticism, and upon another trial may be given as on the first.

The commonwealth was entitled to have the jury instructed, in accordance with the provisions of section 39 of the Criminal Code of Practice, that it was the duty of the officer, before making the arrest, to inform the offender that he was about to be arrested and the offense for which he was to be arrested, unless the decedent knew these facts, in which latter case it was not necessary to inform him of that which he already knew. The court should, in addition, have told the jury plainly that it was the duty of the peace officer to arrest the offender upon the verbal request or demand of the conductor, and that in making the arrest the peace officer was not required to examine into the guilt or innocence of the offender whom the conductor asked to have arrested, and it was the duty of the decedent to submit to a lawful arrest at the hands of the peace officer, whether or not he had done anything which justified the arrest. In order to make the statute effective, it was necessary to authorize the officer to make the arrest upon the verbal request of the conductor. It does not contemplate that the offense should have been committed in the presence of the officer, and therefore the officer was authorized to act under the direction of the conductor. It

may be that this construction will occasionally work a hardship upon the citizen, but, as said before, this hardship is necessary in the individual instance in order to effectuate a statute which is intended to subserve a great and general good. And the citizen who is oppressed unlawfully by its operation has his remedy against the railroad corporation for malicious prosecution.

It is therefore now ordered that this opinion be certified to the trial court, as by law required.