## Chesapeake & Ohio Railway Company v. Whitaker's Administrator.

(Decided June 18, 1915.)

### Appeal from Floyd Circuit Court.

1. Railroads—Arrest and Death of Passenger—When Railroad Company Not Liable.—Where the conductor in charge of a passenger train gives information to an officer who happens to be on board that a passenger in another car has been guilty of boisterous conduct and is disturbing the other passengers, and the officer undertakes to arrest the passenger, and the latter resists arrest, and in an altercation which followed, lost his life, the direct and proximate cause of his death was his unlawful act in resisting arrest, and the railroad company is not liable in an action for damages by his personal representative, even though the complaint made by the conductor to the officer was false and unfounded.

2. Railroads—Arrest of Passenger.—If the conductor by false and malicious complaint wrongfully procures an officer to arrest a passenger the latter will have cause for action for false arrest, but in any event it was the passenger's duty to peacefully submit to arrest by the officer.

HARKINS & HARKINS, WORTHINGTON, COCHRAN & BROWNING and F. T. D. WALLACE for appellant.

F. A. HOPKINS, J. C. HOPKINS, A. F. BYRD and CALLOWAY HOWARD for appelleee.

OPINION OF THE COURT BY JUDGE TURNER—Reversing.

This is an action by the administrator of John Whitaker, deceased, against the Chesapeake & Ohio Railway Company, Fred Marcum, Charles Vaughn, and Henry Evans wherein damages are sought against the defendants for the wrongful death of Whitaker caused, as alleged, by the wrongful acts of the individual defendants and the officers and agents of the corporate defendant who were in charge of a train on which decedent was a passenger. The suit grows out of the same

transaction involved in the case of Commonwealth v. Marcum, 135 Ky., 1.

The statement of the facts in that opinion, as far as it goes, is a substantially correct statement of the facts as shown by this record, and is as follows:

"The Chesapeake & Ohio Railway Company on Sunday ————, ran an excursion train through Lawrence County, Kentucky, to Catlettsburg. The deceased, John Whitaker, and his two brothers, Caleb and Frank, with several friends and acquaintances, went on this excursion. When the party reached Catlettsburg, John Whitaker and his friends proceeded to have a good time by getting drunk and visiting houses of prostitution. At one of these, John Whitaker got into an altercation with one of the women in the house, and drew his pistol, flourishing it about in a reckless manner. One of his companions, Sam Robinson, in order to keep him out of trouble, took the pistol from the drunken man, and placed it in his own pocket. The train returned at night, and John Whitaker and his party had with them a suit case containing six quarts of whiskey and gin, of which they partook freely, and were in a hilarious and boisterous mood. The conductor, Frank Blevins, warned John Whitaker several times to keep quiet, and not to make a disturbance, and finally said to him: "You have got to cut that out (meaning his boisterous behavior), for I have got a man on this train who will take you off." He referred to the appellee, Fred Marcum, who was marshal of Louisa. When the train reached Lawrence County, Marcum, at the instance and request of the conductor, Blevins, went into the car where Whitaker and his party were for the purpose of arresting those who were boisterous and unruly. They first arrested Sam Robinson, who, as before stated, had taken John Whitaker's pistol from him in Catlettsburg. In making this arrest they mistook Robinson for Whitaker; they both wearing white hats, and looking something alike. Robinson submitted quietly to the arrest, and went with the officer and conductor to another car, where he explained to them that they were mistaken in the man, and told them that he had taken a pistol from Whitaker to keep him out of trouble. Thereupon the officer released Robinson, and with the conductor went back into the car for the purpose of finding and arresting John Whitaker. Whitaker and his brothers, who had seen the arrest of Sam Robinson, undertook to

avoid the arrest of John Whitaker by the following ruse: John left the seat he was occupying, went in the forward part of the car, and on the opposite side of the aisle from where he had been sitting or standing, and took a seat by a little boy; and, in order to conceal him, one of his brothers sat on the arm of the seat, and leaned over John so as to screen him from ordinary observation. This necessitated somewhat of a search by the officer and the conductor, with the result that the conductor, Blevins, finally discovered John, and said to the officer, "Here he is. This is your man," or words to that effect. Thereupon the marshal, Marcum, put his hand upon the shoulder or neck of Whitaker, and said to him: "You must go with me. You are under arrest." Thereupon Whitaker replied: "I haven't done anything, and I will not go." The marshal then said, "Oh, yes, you will," and then gave him a pull or jerk with his hand. Thereupon John Whitaker immediately assaulted the officer, knocking him down or very nearly knocking him down, and his brothers, and perhaps others at once assaulted the marshal and conductor, Blevins, and a general and free fight resulted, creating the greatest confusion and consternation among the passengers, many of whom left or tried to leave the car. The marshal was badly beaten about the face, the blood running freely from a wound on his head down in his eyes. In the midst of the melee he drew his pistol and shot John Whitaker in the left breast, and he sank into his seat, and there died within a few minutes.

We have not recited all the mass of testimony that was adduced upon the trial. The evidence for the Commonwealth and that for the defendant differs as to the degree of noise or boisterous conduct of Whitaker and his friends, but the evidence for the Commonwealth sufficiently shows the facts to be substantially as stated in this opinion."

It is further shown in the evidence for the plaintiff in this case by several witnesses that the car was crowded and people therein were standing in the aisle, and that several of the passengers were more or less hilarious and were laughing, talking, and singing, but that the decedent, prior to the time of his attempted arrest, was not disturbing anybody in the car, and that no complaint of his conduct had been made by anyone.

Upon a trial in the circuit court the jury returned a verdict for $18,000 for the plaintiff against the Chesa-

peake & Ohio Railway Company and Marcum, and from that judgment the railway company appeals.

The uncontradicted evidence is that the decedent resisted arrest; even his two brothers, who were present, testified that he declined to go with Marcum when he was requested to go with him, and said he hadn't done anything and wasn't going.

The whole theory of the plaintiff's case is erroneously based upon the idea that the decedent came to his death because of the alleged wrongful and false statement made by the conductor Blevins to Marcum, and that as a result of this alleged wrongful and false accusation the conductor Blevins and the other defendants unlawfully and wrongfully assaulted and killed the decedent. Assuming it to be true that the conductor did falsely state to Marcum that the decedent had been guilty of boisterous conduct, and requested Marcum to arrest him, still under the admitted facts of this case that was not either the proximate or direct cause of Whitaker's death. If Whitaker had submitted to arrest, as it was his duty under the law to do, whether the charge against him was true or untrue, or whether he had been guilty of any public offense or not, the altercation would not have occurred and he would not have lost his life. The direct and only cause of the difficulty which resulted in his death was his own unlawful and wrongful refusal to submit to arrest at the hands of an officer authorized to arrest him.

From the admitted fact that a few moments before Marcum had arrested in the same car a friend of Whitaker's with whom he had been all day, and the further fact that when Marcum told him to go with him he said: "I haven't done anything and am not going," it is conclusive that he knew Marcum was an officer and was arresting him, and especially in view of the fact that he had a short time before been notified by the conductor that he had a man on board who would take care of him if he did not cut out his misbehavior.

In the case of Commonwealth v. Marcum, 135 Ky., 1, on this question of the duty of Whitaker to submit to arrest, dealing with this same transaction, this court said:

"The court should, in addition, have told the jury plainly that it was the duty of the peace officer to arrest the offender upon the verbal request or demand of the conductor, and that in making the arrest the peace offi-

cer was not required to examine into the guilt or innocence of the offender whom the conductor asked to have arrested, and it was the duty of the decedent to submit to a lawful arrest at the hands of the peace officer, whether or not he had done anything which justified the arrest. In order to make the statute effective, it was necessary to authorize the officer to make the arrest upon the verbal request of the conductor. It does not contemplate that the offense should have been committed in the presence of the officer, and therefore the officer was authorized to act under the direction of the conductor.''

It seems to us that this is conclusive of this case; if it was the duty of Whitaker to submit to arrest, and he unlawfully refused to submit and brought about the difficulty in which he lost his life, there can be no reasonable claim that the complaint of the conductor to the officer, whether justified or not, was the cause of appellant's death.

If the conductor, by false and malicious complaint, had wrongfully procured an officer to arrest Whitaker, undoubtedly he would have had a cause of action for false arrest, but this is not an action for false arrest. Even if the conductor did everything that is now charged against him and caused the officer, without provocation or excuse, to arrest Whitaker, the admitted facts show that this was not the cause of Whitaker's death. If he had quietly submitted to arrest and it had been thereafter disclosed that his arrest was wrongful and had been procured by the conductor, while acting in the scope of his duty as such, he would have had a good cause of action for false arrest. But, instead of submitting to arrest like a law-abiding citizen should, he decided in advance that the attempt to arrest him was unlawful and that he would not submit to it, and thereby brought on the altercation in which he lost his life.

The complaint of the conductor to the officer was the direct and proximate cause of the arrest of Whitaker, but Whitaker's intervening act in refusing to submit to arrest was the direct cause of the difficulty which resulted in his death. Under the admitted facts the peremptory instruction should have been given.

The judgment is reversed with directions to grant appellant a new trial, and for further proceedings consistent herewith. Judge Hannah not sitting.