JUDGE LINDSAY
delivered the opinion oe the court.
The petition of April 2, 1872, as amended on the 9th of the same month, presented a cause of action under the first section of the act of March 10, 1854. It was alleged that the intestate was killed by the employees of the railroad company carelessly and negligently causing a train of its cars to be run over him, and that he’ was not at the time an employee of the company.
It was not necessary and would not have been proper to state in detail the circumstances from which negligence or carelessness might be inferred. The Code of Practice requires facts, and not the evidence of facts, to be stated. No different rule was intimated in the case of The Louisville & Portland Canal Company v. Murphy (ante, p. 522). It was merely held that it was not sufficient to allege that A lost his life by or through the negligence of B, without stating some act upon the part of B, or the failure by him to perform some legal duty, which act or failure contributed directly to the loss of life complained of.
The petition in that case was held defective because it did not show that the canal company was under a legal obligation to the public to keep in repair the bridge from which Murphy’s intestate fell, and not because it failed to set out the particular circumstances from which it was expected the negligence in failing to repair would be deduced.
*732 Iii actions for injuries to the person neither motive, intent, nor the circumstances under which the injury was inflicted need be stated. An allegation of the extent of the injury and the manner of its infliction is sufficient, and when it is the result of negligence or carelessness the charge is sufficient if made in general terms. . (1 Chitty’s Pl. 388, and 2 ib. 650; Chiles v. Drake, 2 Met. 147.)
The averment of the essential facts — viz., the death of the intestate — that his life was destroyed by the act of the railroad company in running its cars over him, and the carelessness and negligence through or by which this was done, made out for appellee a cause of action, under the first section of the act of 1854.
The amendment allowed by the court on the 18th of June was not an amended petition, setting up a new cause of action, but an amendment to the original petition, setting out the same facts, and alleging that the negligence heretofore complained of' was willful. This amendment brought the cause of action within the provisions of the third section of the act of 1854, allowing punitive damages in cases in which the life of the deceased was lost or destroyed by the willful neglect of another person, or of a corporation or company, their servants or agents.
Under the first section of the act in question a personal representative can not recover, unless the life was lost through the negligence or carelessness of the proprietor or proprietors of a railroad, or by reason of the unfitness, negligence, or carelessness of their servants or agents, and not then if the person killed was at the time an employee of the party sued; but under the third section he may recover against any person, corporation, or company for the loss of the life of any one, whether an employee or not, upon proof that the death was the result of willful negligence.
In actions against railroad companies, which are embraced *733 by the provisions of both the first and third sections of the act, an averment of willful negligence, resulting in the death of a person not an employee of the company, authorizes a recovery under either section, in case the proof warrants a recovery at all. If willful negligence be established, punitive damages may be awarded; if mere culpable negligence, then such damages as the person injured might have recovered if death had not ensued. As to railroad companies or proprietors, unless it be an employee who is killed, the two sections should be treated as one; and when it is averred in the petition that the person killed was not an employee, and that the negligence was willful, the action should be tried as an action to recover damages for personal injuries not resulting in death, except that instead of the common-law rule, by which the measure of the recovery is to be determined, the jury should be governed by the standards prescribed by the statute.
The allegation of willful negligence necessarily includes all inferior grades, and the jury must determine from the proof whether the recovery is to be had, if at all, under the first or third section of the act, and then assess the damages according to the measures of recovery fixed by the provisions of the act itself. This court did not express a different opinion in the Murphy case. The canal company could not be held responsible under the act of 1854 unless the negligence was willful.
The right of action allowed by the first section is not identical with those growing out of personal injuries, and which, under the tenth chapter of the Revised Statutes, survive to the personal representative. That chapter includes only causes of action growing out of personal injuries, not the direct and immediate cause of the death. By the common law injuries affecting life were not generally the subject of a civil action. (Shearman and Redfield on Negligence, secs. 290, 291.) Such was the law in this state at the time the Revised Statutes were adopted. (Eden v. The L. & F. R. R. Co., 14 B. Mon. 165.)
*734 The tenth chapter applies alone to such causes of action as existed at the time of its enactment. It was so understood by the legislature, and hence at the session succeeding the decision in Eden’s case the remedy against railroad companies and proprietors allowed by the first section of the act of 1854 was provided by express statute. Therefore, as this first section does not apply to canal companies, it was correctly said in Murphy’s case that, the evidence failing to show willful negligence, a nonsuit might properly have been ordered.
The court below did not abuse a sound discretion in permitting the amendment- of June 18th to be made, nor did it err in refusing to instruct as in case of a nonsuit. It would be improper for this court to analyze appellee’s testimony, or to express an opinion as to whether it was of a character authorizing the jury to find a verdict for him under either section of the act; but there was certainly no such failure of proof as to any material fact as would have warranted the court in taking the case from the jury.
We can not say that the court erred in overruling the motion of appellant to submit numerous questions of fact to the jury to be specifically answered. The jury have the right of their own motion to render either a general or special verdict. The court has the power to require special findings upon particular questions of fact; but this right is to be exercised at the discretion of the court, and not upon the. demand of the parties, or either of them. (Civil Code of Practice, sec. 357; L. & N. R. R. Co. v. Gilmore, MS. Opinion, 1872.) In this case there was no abuse of a sound judicial discretion.
Instructions Nos. 1 and 2 asked by appellant are fragmentary, stating the law correctly to the extent it is stated at all, but calculated to mislead, because the propositions are incomplete, and are isolated from others that modify them when applied to the facts of such a case as this. All the instructions asked by appellant touching the conduct of the street-car *735 driver and seeking to impute his supposed negligence to the deceased were rightly refused.
The jury had the right to consider any evidence conducing to show negligence or reckless conduct upon the part of the driver of the street-car in determining whether those in charge of the railroad company’s train of cars were guilty of negligence in not attempting sooner to stop it. Notwithstanding the driver of the street-car may have recklessly driven across the track of the railroad company, in dangerous proximity to the moving train, still the servants of the company, so soon as it became apparent that he intended to do so, were under obligations to passengers on the street-ear to use all proper efforts to arrest the progress of the train, and prevent, if possible, the collision; but as it is much more difficult to control the movements of a heavy train of cars than to check a single street-car drawn by mules or horses, the employees of the railroad company could. not anticipate that the driver of the street-car would attempt to cross the street in the face of the advancing train, and consequently could not be expected to take steps to avert an unexpected danger until it became manifest that the driver intended to act contrary to the course usually adopted by persons of reasonable prudence under like circumstances. But the negligence of the driver will not excuse negligence upon the part of the railroad employees. If the life of Case was destroyed by the concurrent negligence of two or more persons, none of whom were acting as his agent or servant, nor subject to his government or control, all the employers of the guilty agents may be held responsible for the injury, and one can not plead the negligence of the servants of the other as matter of defense in an action against himself. This doctrine was announced by this court in Stewart’s case (2 Metcalfe, 119); and as it is in harmony with the reason of the law, we are not inclined to depart from it, although a different rule appears to have been followed in *736 one English and in a few American cases. The driver of the street-car was not acting for the deceased, and was not subject to his control, and hence the court not only did not err to appellant’s prejudice in refusing instructions intended to place him in that attitude, but erred to the prejudice of appellee in giving of its own motion instructions Nos. 2 and 4.
The definition of willful neglect, as given in the court’s instruction No. 5, is liable to no valid objection, and appellant can not therefore complain of the refusal to give No. 11 as asked.
Ordinary negligence is satisfactorily defined by instruction No. 7; but we are of opinion that instruction No. 6 asked by appellant should have been given, in connection with it. By so doing the application of the principle set out in the one to the facts of this case would have been illustrated by the other.
Special instruction No. 2, given on application of the jury, authorized a finding against appellant, upon proof of simple negligence, for “such damages as the jury might deem just and proper by way of compensation, not exceeding the amount claimed in the petition.” The jury was not instructed as to what constitutes compensation, but was left to determine that matter by their opinion as to what was just and proper.
The term compensation when applied to damages has a fixed legal signification, much more restricted than its common or general acceptation. (Sedgwick on Measure of Damages, sec. 35; Parker v. Jenkins, 3 Bush, 587.) In actions for personal injuries where death does not ensue it is confined to the expense of cure, the value of time lost, a fair compensation for the physical and mental suffering caused by the injury, and for any permanent reduction of the power to earn money. (Shearman and Redfield on Negligence, sec. 606.)
In this case the death was immediate, and hence none of these elements except the last can be considered, and in fixing *737 the amount of compensatory damages the jury can only inquire as to the value of the deceased’s power to earn money, which was wholly destroyed by his death. Left to their own discretion as to what amount “was just and proper,” the jury assessed as compensatory damages ten thousand five hundred dollars. Whether such a verdict would have been returned if they had been instructed as to what elements they had the right to consider, or if they had not been told that what they might “ deem just and proper” was the standard by which they were to be governed, of course we can not tell; but as they were not only not instructed as to the legal signification of the term “compensation,” but were in effect misinstructed as to its meaning, appellant is entitled to a reversal. Instruction No. 5 asked by appellee would not have cured this objection, if given, as it is incomplete and indefinite.
This court has never held that other than compensatory damages can be awarded under the first section of the act of 1854. The question was not presented ifi the case of Bowler v. Lane (3 Met. 311). There it was complained that the recovery was not confined to the actual loss of time and amount of money expended. The court held that if Lane had survived, his recovery would not have been confined to these two items; and as his personal representative was authorized to recover in the same manner that he could have done had he survived, the administratrix could not properly have been restricted' to them. Exemplary damages were referred to merely by way of illustration, and no opinion was expressed as to whether such damages could or not be recovered in actions under the first section of the act. Considering the entire act, if seems to us that punitive damages are allowable only in cases of Avillful neglect.
The judgment is reversed, and the cause remanded for a new trial consistent with this opinion.