CASE 63.—ACTION BY GILBERT SETSER'S ADMINISTRATOR AGAINST THE LOUISVILLE & NASHVILLE RAILROAD COMPANY.—May 27, 1910.

## L. & N. R. R. Co. v. Setser's Admr.

Appeal from Bell Circuit Court.

W. T. Davis, Circuit Judge.

Judgment for plaintiff, defendant appeals.—Reversed.

1. Exceptions, Bill of—Time for Filing—Extension.—The court may extend the time for filing a bill of exceptions before expiration of the time allowed for that purpose to another day in the term, and, when the bill is filed within the time so allowed, it becomes a part of the record.
2. Trial—Submission of Issue—Sufficiency of Evidence.—Where there is testimony warranting a recovery, plaintiff's right to go to the jury is not affected by the fact that other witnesses whom he introduced may have given contradictory evidence.
3. Carriers—Ejection of Passenger—Evidence.—Evidence held not to show that an ejected passenger was in a helpess condition when put off the train.
4. Carriers—Ejection of Passenger—Duty of Carrier.—Under the express provisions of Ky. St. section 806, it is the duty of the conductor to put off a passenger who shall in the hearing of persons or other passengers and to their annoyance utter obscene or profane language, or behave in a boisterous or riotous manner, and the conductor need not wait until he reaches the next station.

L. & N. R. R. Co. v. Setser's Admr.

5. Carriers—Ejection of Passengers—Duty of Carrier.—In such a case, the conductor is not required to permit the person to continue on the train upon the promise of another passenger to see that he will hurt nobody.

6. Carriers—Ejection of Passengers—Duty of Carrier.—The conductor should use ordinary care for the safety of an ejected passenger, and should not put him off in a cut where he would not be safe from passing trains.

CHARLES W. METCALF, J. W. ALCORN, CHAS. A. MOORMAN and BENJAMIN D. WARFIELD for L. & N. R. R. Co.

B. B. GOLDEN, W. T. DAVIS & E. F. BAKER for Setsers Admr.

OPINION OF THE COURT BY JUDGE HOBSON—Reversing.

On the night of April 21, 1906, Gilbert Setser was killed on the line of the Louisville & Nashville Railroad, and the first of these actions was brought to recover for his death on the ground that it was caused by the negligence of the railroad company. Upon a trial of the action at the March term, 1909, of the circuit court, there was a verdict and judgment for $30,000 in favor of the plaintiff. The court at that term overruled the defendant's motion for a new trial, and gave it until the 20th day of the next April term to prepare and file a bill of exceptions. The March term was held by a special judge, who shortly before the 20th day of the April term wrote to the defendant's attorney that it was not convenient for him to be present on the twentieth day of the term for the filing of the bill of exceptions referred to, and asked that the time be extended so that he could come down a day or two later. The defendant's attorney then saw one of the plaintiff's attorneys, who agreed to what the judge wished, and thereupon the defendant's attorney went before the court, and the regular judge made an order to the effect that the defend-

ant had on that day tendered its bill of exceptions, but that, the special judge who had tried the case being absent, the defendant was given until May 22d to have it signed and approved. The stenographer had not at that time completed the transcript of the evidence, and this was not in fact tendered with the bill of exceptions. On May 22d, the special judge being present, the bill of exceptions and transcript of the evidence were presented to him, approved, and regularly filed. When the record was filed in this court, the plaintiff entered a motion to strike out the bill of exceptions, and he then brought an original action in the circuit court to set aside the order extending the time for filing the bill of exceptions, and the order filing it. The circuit court sustained a demurrer to his petition, and he, having failed to plead further, dismissed it. From this judgment he appeals.

The motion to strike out the bill of exceptions and the appeal from the order dismissing the plaintiff's petition to set aside the orders referred to will be disposed of together. It was decided in Knecht v. Louisville Home Tel. Co., 121 Ky. 492, 89 S. W. 508, 28 Ky. Law Rep. 456, that if a bill of exceptions was filed within the time allowed, but no transcript of the evidence, the transcript of the evidence could not be filed after the court had lost jurisdiction of the case. But here the order extending the time for the filing of the bill of exceptions was made before the expiration of the time allowed for that purpose, and was not objected to. Within the time allowed by the order, the bill of exceptions and transcript of the evidence were filed, and no objection was made then to the filing of the bill of exceptions or transcript. The court had full power to extend the time for filing the bill of exceptions to another day in the term, and,

when the bill was filed with the time so allowed, it became properly a part of the record. We had practically this question before us in Walling v. Eggers, 78 S. W. 428, 25 Ky. Law Rep. 1565, and there so held. The judgment of the circuit court dismissing the petition of the administrtator to set aside the orders referred to is affirmed, and the motion to strike out the bill of exceptions and transcript of the evidence is overruled.

The evidence on the trial of the case as to the death of the intestate was as follows: Gilbert Setser was 20 years old. He got on a passenger train at Middlesboro about 10 p. m. on Saturday, April 21st, to go to his father's home. He had been drinking before he got on the train, and continued to drink after he got on it. After the train pulled out of Middlesboro, the conductor started at the front of the train to take up his tickets, and, having walked through the front part of the car set apart for colored passengers, came to the rear part of the car, which was called the "smoker," in which Gilbert Setser was. Before the conductor had gotten into the car Gilbert Setser had had a fuss with a man named France, and also with a man named Sizemore, and Sizemore had drawn a knife on him. There was considerable commotion in the car, and a beer bottle had been thrown by some one, but apparently not by the deceased. When the conductor came into the car, he was appealed to by two passengers to put the deceased off, saying if he did not, there would be serious trouble. The conductor made the deceased sit down and told him to be quiet. The deceased sat down, and the conductor began taking up his tickets; but, before he had taken up many fares, the deceased got out of

his seat and engaged in a fuss with a brakeman. He
was profane, boisterous, and riotous, using in the
car vile language.  The conductor then took him by
the arm, pulled the bell cord, and he and the brake-
man started out with him.  At this point, finding that
the engineer was not obeying his signal, the conduct-
or, according  to the testimony  for the defendant,
opened the conductor's valve, which had the effect
to cause the train to stop immediately.  Up to this
point there is very little conflict in the evidence. From
this on the evidence is quite conflicting.  According
to two witnesses for the plaintiff, the train slowed
up a little, and while it was still running the con-
ductor and brakeman took the deceased out on the
platform, and when he was on the second step of
the car pushed him off.  The train being then in a
cut,  according to these witnesses, the deceased was
thrown against the side of the cut, and fell or rolled
back under the train.  The plaintiff introduced sev-
eral other witnesses who said that the train did not
stop, and he also introduced several witnesses who
in effect said that the train was stopped and that the
deceased then got off.  One witness introduced by
him said that the train stopped, the deceased  was
then put off, and he went running off up toward the
engine.    The evidence for the defendant was to the
effect that the brakeman got down on the ground and
helped the deceased off, and then signalled the en-
gineer to go ahead.  The evidence for the defendant
also showed that the conductor's valve was opened,
and that two or three minutes were required to fill
the air chambers before the train would start; that,
after the train started, and had gotten about 1,500
feet, the train stopped a second time, this stop being
due to the fact that the fireman saw a man standing

on the steps of the engine who said the conductor had put him off the train, and the engineer, as soon as he learned who he was, then stopped the train and made him get off.  According to the testimony of the engineer and the fireman, the man then went hurriedly back toward the rear of the train.  According to the evidence for the defendant, the place where the deceased was put off the train was about 2,500 feet south of the tunnel.  According to the evidence for the plaintiff, he was pushed off in the cut right at the mouth of the tunnel.  On the next morning his hat was found a few feet south of the tunnel, one foot was found cut off a few feet inside the tunnel; then a few feet further on, one knee, and a few feet further the remainder of his body.

It is insisted for the defendant that only two witnesses testified to his being pushed off the car, and that a number of other witnesses introduced by the plaintiff contradicted this evidence, so that, taking the plaintiff's evidence alone, the mind is left in doubt as to how it was, and therefore a peremptory instruction to find for the defendant should have been given. But the jury might have believed the two witnesses and not have believed the others.  Where there is testimony warranting a recovery, the plaintiff's right to go to the jury is not affected by the fact that other witnesses whom he introduced may have given contradictory evidence.

It is also insisted that the plaintiff's petition does not charge the defendant with pushing the deceased off the train while it was in motion.  This is true. The petition and the amended petition seem to have been framed on the idea that the deceased was helplessly drunk, and that the defendant was negligent

in putting him off in that condition on the side of the track. The idea of his being pushed off the train while it was in motion is not conveyed in the petition, and its general allegations of negligence must be construed to refer to the specific acts which it sets out. There was nothing in the conduct of the deceased after the conductor came into the car that would inform him that the deceased was in such a condition that it was not safe to put him off the train and leave him. It was in April; the weather was good; and there was no reason why a man 20 years old could not take care of himself. The deceased was simply quarreling, profane, and boisterous. His appearance showed perhaps that he was drinking, but he was not helpless. On the contrary, he was insisting on fighting. There was no evidence to take the case to the jury on the ground that the deceased was in such a condition as to be helpless, and therefore should not have been put off on the side of the track.

When the deceased was profane and boisterous in the car and had behaved as he had, if the conductor had not put him off, and the deceased had hurt one of the passengers, the company would have been justly held responsible for not protecting him by putting the deceased off. We so held under practically the same proof in Louisville & Nashville Railroad Company v. McEwan, 31 S. W. 465, 17 Ky. Law Rep. 406; Id., 51 S. W. 619, 21 Ky. Law Rep. 487. Section 806, Ky. St., provides in substance that if a person while riding on a train shall in the hearing or presence of other passengers, and to their annoyance, utter obscene or profane language, or behave in a boisterous or riotous manner, it shall be the duty of the conductor in charge of the train

to put him off.  We upheld this statute in C. & O. R.
R. Co. v. Crank, 128 Ky. 329, 108 S. W. 276, 32 Ky
Law Rep. 1202, 16 L. R. A. (N. S.) 197, and in Com.
v. Marcum, 122 S. W. 215.  Upon the undisputed facts
it was the duty of the conductor to put the deceased
off the train, under the rule declared in those opin-
ions, and he was not required to wait until he reach-
ed the next station.

The plaintiff proved by three witnesses that, as
the conductor was taking the deceased from the train,
a passenger said to him not to put him off; that he
would see that he hurt nobody.  The conductor de-
clined to do this, and properly so.  If he had trusted
to the passenger keeping the deceased quiet, and the
deceased had not kept quiet, but  had hurt another
passenger, the company would have been held respon-
sible.  The deceased had forfeited his right to ride
on the train, and the conductor was not required to
take the chance of a stranger being able to keep him
quiet.  The evidence was admitted over the defend-
ant's objection and should have been excluded.

While the testimony for the plaintiff did not show
a right to recover on the ground set out in his peti-
tion, there was evidence introduced by him sufficient
to take the case to the jury on two grounds:  First,
that the servants of the defendant pushed the de-
ceased from the train while it was in motion, against
the side of the cut, and thus caused him to fall under
the train.  Second, that he was put off the train in
a deep cut near the mouth of the tunnel where it was
not safe to put off a person.  The defendant intro-
duced proof showing that on the next morning, about
60 feet from the  mouth of the  tunnel, there were
signs of a man's hands and feet on a clay bank  as
though one had there tried to climb up the clay bank

and had fallen back; or had been thrown against the bank and had fallen down. While the defendant had the right to put the deceased off the train, he should not have put him off in a deep cut where he would not be safe from passing trains. There was a freight train following the passenger train which came along in a few minutes. The men on this train testified to seeing nothing of the deceased. If the deceased was put off 2,500 feet south of the tunnel, and where the defendant shows he was put off, the nature of that place was such as not to make it improper to put him off there. But if he was put off in the deep cut near the mouth of the tunnel, it would be a question for the jury whether it was a safe place to put one off. The instructions which the court gave the jury do not present the law of the case. Under the evidence, the court should have told the jury, in substance: (1) The conductor had the right to put the deceased off the train, but that it was incumbent upon him in doing so to use ordinary care for his safety. (2) If he put the deceased off in a cut where it was not reasonably safe to put off a man in the ordinary possession of his faculties, and by reason of this the deceased lost his life, they should find for the plaintiff compensatory damages for his death. (3) If he or the brakeman by his direction pushed the deceased from the steps of the car while the train was in motion, and thus caused him to fall under the train and be killed, the plaintiff should recover compensation for the loss of his life, and the jury might in their discretion award such further sum by way of punitive damages as in their judgment was right and proper. (4) Unless the deceased was put off in a cut where it was not reasonably safe for a person in the ordinary possession of his facul-

ties to be put off, or was  pushed or thrown by the conductor or brakeman from the train while in motion, and was so caused to be killed, the jury should find for the defendant.    (5) If the deceased, after he was put off the train, got on the engine, the engineer had the right to make him get off it, and, if by reason of this he was killed, the defendant is not responsible therefor.

The plaintiff's petition is not sufficient to sustain a recovery on the ground that the place where he was put off was dangerous, or that he was pushed off the train while it was in motion; but, as the evidence was all heard on the trial, we have considered the case on the merits, and on the return of the case to the circuit court the plaintiff will be allowed to amend his petition.

The judgment in first case reversed, and cause remanded for a new trial and for further proceedings consistent herewith.