## Bell-Knox Coal Co. v. Gregory

(Decided February 21, 1913.)

### Appeal from Knox Circuit Court.

1. Master and Servant—Failure to Furnish Servant Reasonably Safe Place to Work—Evidence—Sufficiency.—In an action for damages by a servant against his master for the latter's failure to use ordinary care to furnish him a reasonably safe place in which to work, evidence examined and held sufficient to take the case to the jury.

2. Master and Servant—Tramroad—Dangerous or Defective Condition of Tracks—Subsequent Repairs.—While subsequent repairs of a track are not admissible to show the defective condition of the track at the time of the accident, yet if the master undertakes to show the safe condition of the track by introducing evidence of its subsequent use without repair and without accident, plaintiff may rebut this evidence by then showing that as a matter of fact the track was repaired.

3. Master and Servant—Tramroad—Stationary Engineer—"Rope Rider"—Fellow Servants.—A rope rider, whose duty it is to ride cars in and out of a mine and adjust the rope by which they are operated, and a stationary engineer in charge of the engine that operates the cars by means of the rope, and who is brought into immediate co-operation with the rope rider and acts on signals from him, are fellow servants.

4. Master and Servant—Negligence of Fellow Servant—Concurring Negligence of Fellow Servant and Master.—Where a servant is injured solely by the negligence of a fellow servant, he cannot recover, but if his injuries are caused by the concurring negligence of a fellow servant and of the master in failing to use ordinary care to furnish him a reasonably safe place in which to work, a recovery may be had.

5. Master and Servant—Personal Injury—Action for Damages—Contributory Negligence.—In an action for damages by a servant against his master, evidence examined, and held that the question of contributory negligence was for the jury.

6. Master and Servant—Personal Injury—Evidence—Admissibility.— It is error to refuse to permit the master to prove under a general denial that during the period for which plaintiff is asking damages for loss of time, he was carried on the master's pay rolls, and received pay from him.

T. G. ANDERSON, for appellant.

J. M. ROBSION and J. D. TUGGLE, for appellee.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER—Reversing.

Plaintiff, W. T. Gregory, brought this action against defendant, Bell-Knox Coal Company, to recover damages for personal injury. The jury returned a verdict in his favor for $1,000. Judgment was entered accordingly, and defendant appeals.

Defendant operates a coal mine in Knox County. The mine is located on the side of a mountain, and the drift mouth or tunnel of the mine enters the mountain practically at right angles. Coal is carried from the mine by means of cars operated on a tramroad. The tramroad emerges from the drift mouth and runs to the left along the mountain side for a distance of about 60 yards, and around what is known as the upper tipple, or "knuckle," a name given to it by the miners. From the drift mouth to the knuckle there is only one track. From that point on to the tipple there are two tracks, one on which the loaded cars are run to the tipple, called the loaded track, and the other on which empty cars return from the tipple, called the empty track. The cars are operated by

means of a stationary engine, located near the track at the knuckle. As the empty cars are drawn from the tipple to the knuckle, the cable which is used to draw, the cars winds around a drum, which then unwinds as the cars go by gravity from the knuckle into the drift mouth. The mine cars are about nine feet long and about four and a half feet wide. The bottom of the car is only a few inches from the ties. On each end of these cars is a bumper, a large iron piece about twelve inches one way and sixteen inches the other. The cable by which the cars are operated is a rope about one inch in diameter. Attached to its end is an iron hook, weighing about 15 pounds. The man who superintends the movements of the cars in and out of the mine, and fastens and unfastens the cable or rope is called the "rope rider." The engineer in charge of the stationary engine operates the engine and cable on signals from the rope rider.

According to the evidence for plaintiff, he had for some time been engaged in rope riding and performing other work for defendant. For about ten days or two weeks before the occasion in question he had not been rope riding. He was injured on the first trip that he made on the morning of the accident. Just before the accident he had assembled four cars for the purpose of returning them into the mine. He was on the front car, with one foot in the car and one foot on the bumper. He had disengaged the rope from the car upon which he was riding, and the car ran off the track at a point near the knuckle, and running into an embankment nearby, injured his foot. The bones of his heel and ankle were crushed. After the accident his foot and leg were placed in splints and kept in that condition for about eight weeks. Plaintiff says that he suffered intense pain for months after the injury, and at the time of the trial was still suffering. By reason of his injury he was unable to plow on his farm. Some three or four witnesses testified that where the empty track led into the loaded track, one of the bolts that connected the bar rail to the tracks was out of place. One of the rails was loose, and had partially turned over. The ties were rotten, and would not hold a spike. The rails did not connect at the switch point, but the end of the loose rail projected out, and when the car got to the switch it struck the end of the projecting rail instead of passing on to the other track. In this way the car was thrown from the track. There

was also evidence to the effect that it was not plaintiff's duty to inspect or repair the track. It is claimed that if he saw anything defective in the track, however, it was his duty to report it. There was also some evidence to the effect that the car, at the time of the derailment, was going at an excessive rate of speed, and that this was due to the fact that although plaintiff signaled to the engineer to slacken the speed, the latter failed to do so.

The evidence of the defendant is to the effect that though the ties of the loaded track were in bad condition, this condition in no way affected the empty track, on which the derailment took place. Witnesses for defendant also testified that even though the point rail was out of shape and sometimes turned over, and this might affect loaded cars going out of the mine, it could not affect the empty track or the operation of the cars going over that track. Defendant also proved by certain witnesses that the customary way of riding a rope was for the rope rider to have both feet in the car. Defendant's superintendent claims that he warned plaintiff of the danger of riding with one foot on the bumper. Plaintiff denies this.

Upon these facts the court submitted the case to the jury on two issues: (1) the failure of the defendant to furnish plaintiff a reasonably safe place to work; (2) the gross negligence of the engineer in operating the car. We think the evidence was sufficient to justify the submission of the first issue to the jury, but as to the second issue, a different question is presented.

In the recent case of Dana v. Blackburn, 121 Ky., 706, it was held that a rope rider and a stationary engineer were fellow servants. That case cannot be distinguished from this. Here the engine was located near the track. Plaintiff passed by it on each trip that he made. The engineer operated the cars on signals from the plaintiff. The engineer exercised no authority over plaintiff. They were brought into immediate personal association. Their work required mutual co-operation. Each had the opportunity to observe and communicate with the other, to caution him by counsel, incite him by example, or report his delinquency to the master. We therefore conclude that the plaintiff and the stationary engineer were fellow servants. While it is true that plaintiff based his case principally on the negligence of the defendant in

failing to use ordinary care to furnish him a reasonably safe place in which to work, and a greater part of his evidence was directed to this issue, yet, there being some evidence tending to show negligence on the part of the engineer, and the court having submitted this issue to the jury, it is impossible for us to say on which issue the jury predicated its finding. We therefore conclude that the submission of the case on the engineer's negligence was prejudicial error.

Complaint is made of the fact that the plaintiff was permitted to prove that the defendant, after the accident, repaired its tracks at the place of the accident, and that although the court, on defendant's motion, called the attention of the jury to the fact that such evidence was incompetent, and directed the jury not to consider it, yet plaintiff thereafter went into the same subject and introduced additional evidence of the same character. We have frequently held that subsequent repairs are not admissible in evidence to show the dangerous or defective condition of the track at the time of an accident; L. & N. R. R. Co. v. Morton, 121 Ky., 398; L. & N. R. R. Co. v. Stewart, 131 Ky., 665; Black Diamond Coal Co. v. Price, 33 Ky. Law Rep., 334; Interstate Coal Co. v. Shelton, Admr., 152 Ky., 92; but we are of the opinion that any error in this respect was cured by the admonition of the court. As to the complaint that plaintiff afterwards introduced evidence of the same kind, we find, on examination of the record, that defendant itself first went into the question, by attempting to show that the person who succeeded plaintiff as rope rider continued the work without accident and without any change being made in the tracks where it is alleged that the accident took place. Having gone into this question, and having attempted to prove that the track was reasonably safe by showing that it was subsequently used without accident and without being repaired, we are of the opinion that plaintiff then had the right to show as a matter of fact that the track was repaired.

We cannot say that plaintiff was guilty of contributory negligence because at the time of the accident he was riding with one foot in the car and the other foot on the bumper. If the evidence of his witnesses is to be believed, his position while so riding was safer than if he had had both feet in the car. Under these circum-

stances, the question of contributory negligence was for the jury.

It was error to refuse to permit defendant to show that plaintiff was on its payrolls and receiving compensation during the period that he was asking damages for loss of time, even though there was no counterclaim for the sums so paid. In his petition plaintiff alleged that he had lost time from his work and on that account had been damaged in the sum of $300.00. Defendant denied that he had lost any time, or that he had been damaged on that account in the sum of $300.00 or any other sum. Under this general denial, it was competent to show that plaintiff was not damaged to the extent claimed, by introducing evidence to the effect that for a portion or all of the time, he was actually paid by the defendant.

On another trial, the court, in lieu of instruction No. 1, will give the following instruction:

1. It was the duty of defendant to use ordinary care to furnish plaintiff a reasonably safe place in which to work, and if you believe from the evidence that the defendant failed to use such care, and that by reason thereof defendant's tracks on the occasion in question were not in a reasonably safe condition, and such defective condition, if any, was known to the defendant, or could have been known to it by the exercise of ordinary care, and was not known to the plaintiff, or was not so obvious that plaintiff, by the exercise of ordinary care in the discharge of his duties, should have known it, and that by reason thereof, the car on which plaintiff was riding was derailed and wrecked, and plaintiff, while using ordinary care for his own safety, was thereby injured, you will find for the plaintiff; unless you so believe, you will find for the defendant.

If there be evidence tending to show that the derailment of the car was caused by the negligence of the stationary engineer, the court will give the following instruction:

2. Plaintiff and the stationary engineer were fellow servants, and if you believe from the evidence that the derailment of the car in which plaintiff was riding was caused solely by the negligence of the stationary engineer, and plaintiff was thereby injured you will find for the defendant; but if you believe from the evidence that the derailment of the car was caused by the concurring

negligence of the stationary engineer and of the defendant, as set out in instruction No. 1, and plaintiff while exercising ordinary care for his own safety was thereby injured you will find for the plaintiff.

In addition to the foregoing instructions, the court will give the usual instruction on contributory negligence and the measure of damages. He will also define ordinary care and negligence and give an instruction authorizing a verdict by nine or more of the jurymen. No other instructions will be given.

Judgment reversed and cause remanded for new trial consistent with this opinion.