# West Kentucky Coal Company et al. v. Shoulders' Administrator.

(Decided May 20, 1930.)

428

RAYBURN & WITHERS for appellant.

BLACKWELL & LISMAN for appellee.

OPINION OF THE COURT BY JUDGE WILLIS—Reversing.

George Shoulders was employed by the West Kentucky Coal Company, and was engaged in driving an entry in a coal mine. His immediate foreman was Mark Townsend. In June, 1926, Shoulders was killed by a fall of slate or rock, and his administrator sued the coal company and Townsend and Edgar Coffman, who was employed in the same mine as a pit boss, to recover damages for the death. The trial court held that a case was not made out against Coffman, and directed the jury to

find a verdict in his favor. The case was submitted to the jury as to Townsend and the coal company, and a verdict was returned in favor of the plaintiff fixing the damages at $30,000. Pending the action, Townsend died, and it was revived against his administrator. The administrator of Townsend and the coal company have appealed. It was alleged in the petition, and admitted by the defendants, that the West Kentucky Coal Company, although eligible, was not operating under the Workmen's Compensation Law. In such situation the coal company is deprived of the defenses of contributory neglect and assumed risk; but nevertheless it is not liable for an injury to its employee, unless such injury resulted from negligence for which the company is responsible. Ky. Stats., sec. 4960; Gibraltar Coal Mining Co. v. Nalley, 214 Ky. 131, 283 S. W. 416; Gatliff Coal Co. v. Sumner, 196 Ky. 592, 245 S. W. 144; Gatliff Coal Co. v. Powers, 219 Ky. 839, 294 S. W. 472; Deboe v. West Kentucky Coal Co., 216 Ky. 198, 287 S. W. 568; Horse Creek Mining Co. v. Frazier, 224 Ky. 211, 5 S. W. (2d) 1064; Nugent Sand Co. v. Howard, 227 Ky. 93, 11 S. W. (2d) 985.

The first insistence of the appellants is that they were entitled to a peremptory instruction. The argument is based upon an assumption that the danger which resulted in the death of Shoulders was created by himself in his own working place, where it was his duty to inspect and, when danger was discovered, to protect himself against it. It is also contended that he disobeyed orders by firing a shot and taking down coal when he was directed "to clean up the working place." There was testimony for the plaintiff which tended to show that the injury occurred in the entry, and that it was no part of the duty of decedent to inspect or to prop at that place. It further appeared that the rock which later fell on Shoulders was cracked and appeared to be a source of potential danger. Shoulders called that fact to the attention of Townsend, who was entry boss and in charge of the place where the accident happened. Townsend stated that he did not regard the place as dangerous until a slant adjacent thereto was cut through at which time they would timber it. He said further, however, for Shoulders to work in another place and they would have the dangerous place timbered by the next morning. On the morning of the fatal accident Townsend directed Shoulders to go back to the entry where

he had been working and clean it up. There is testimony to the effect that cleaning up the place meant to take down and load the coal that was.loose so that the cutters could continue their work. Shoulders, in obedience to that direction, went into the entry and put a small blast in some coal that was hanging. He went out of the range for the shot and awaited subsidence of the smoke; but, as he returned through the entry, he was caught in the fall and killed. The testimony for the plaintiff tended to show a breach of duty on the part of the defendants. Ky. Stats., sec. 2726-4; Elkhorn Coal Corp. v. Butler, 194 Ky. 183, 238 S. W. 372.

Whilst the defendant introduced testimony tending to show that the accident occurred substantially at the working place and that it was the duty of the decedent to protect the roof of his working place, that question was in issue and was properly submitted to the jury. Duncan Coal Co. v. Thompson, 157 Ky. 304, 162 S. W. 1139. It was the duty of the company to have its mine foreman or his assistant visit and examine the working places, as directed by the statute, and it was also their duty to see that every working place was properly secured, and to see that no person was directed to work in an unsafe place, unless for the purpose of making it safe. Elkhorn Coal Corp. v. Butler supra. In this case Shoulders was not directed to work in the entry for the purpose of making it safe, but was directed to take out the coal at the head of the entry, and the duty of making the roof safe, as shown by plaintiff's evidence, rested upon the timber men especially provided and prepared for the purpose. Under the evidence for the plaintiff, the jury could fairly find that a duty owed Shoulders had been breached, resulting in his injury, and the burden of making out a case of primary negligence was sustained. The court did not err in refusing to grant a peremptory instruction. North East Coal Co. v. Setzer, 169 Ky. 245, 183 S. W. 553.

The next complaint is made regarding the first and third instructions, which were as follows:

"No. 1. The court instructs you that it was the duty of the defendants, West Kentucky Coal Company and Mark Townsend, to use ordinary care to furnish a reasonably safe place for the decedent, George Shoulders, to do his work in, and that if you shall believe from all the evidence in this case that

the defendants, or either of them, failed to use such care, and that by reason thereof the entry in defendant's mine at the place where said Shoulders was killed, was not in a reasonably safe condition, and that the unsafe condition, if it was unsafe, was known to the defendants, or either of them, or could have been known to them by the exercise of ordinary care, and that by reason of the unsafe condition of the said Shoulders' place of work, or where he was killed, if it was unsafe, rock, slate or other formations from the roof of said entry fell upon said Shoulders and killed him, when he was exercising ordinary care for his own safety, you should find your verdict for the plaintiff; but unless you do so believe you should find your verdict for the defendants.

"You may find your verdict for either of the defendants and against the other defendants, or you may find your verdict for both the defendants.

"No. 3. The court instructs the jury that if you shall believe from all the evidence in this case that it was the duty of George Shoulders, under his employment, to inspect and make safe the roof of the entry where he was working and that fell upon and killed him, and that he did so inspect it and ascertained and knew of its unsafe condition, if it was unsafe, and failed to take steps to make said roof reasonably safe and that his death was directly and proximately caused thereby, then you should find your verdict for the defendant."

The first instruction was too favorable to the company since it conditioned liability on the exercise of ordinary care on the part of Shoulders, which was equivalent to allowing the defense of contributory negligence, notwithstanding it was not available to the coal company. Cf. Bevis v. Vanceburg Telephone Co., 132 Ky. 385, 113 S. W. 811. The criticism of the instruction proceeds upon a misapprehension of its effect. It is said in brief that "the court told the jury as a matter of law that it was the duty of the company to furnish decedent a reasonably safe place in which to perform his labor." Such was the fact in the case of Eagle Coal Co. v. Patrick, 161 Ky. 333, 170 S. W. 960, cited by appellant. But in this case the court imposed upon defendant only the duty to exercise ordinary care to maintain the entry in

a reasonably safe condition. It conformed to the criterion declared by this court for the guidance of juries in such cases. Bell-Knox Coal Co. v. Gregory, 152 Ky. 415, 153 S. W. 465; Trosper Coal Co. v. Crawford, 152 Ky. 214, 153 S. W. 211. The third instruction directed the jury, as was necessary to conform to the defendant's theory of the case which found some support in the evidence, to find from the evidence whether it was the duty of decedent to inspect the roof and put up props, and, if it was, whether his own neglect in those respects was the sole cause of the accident, in which event the company would not be liable. It is complained that the first and third instructions are inconsistent, and that each should have referred to the other. The first instruction submitted the plaintiff's theory of the case, the third instruction submitted the defense, and the two instructions were not inconsistent. Each was based upon a different hypothesis. The one or the other applied accordingly as the jury found the facts from the conflicting evidence. It is the duty of the court upon proper request to submit to the jury all theories of the case legally warranted by the pleadings and the proof, Shafer v. Chesapeake & O. R. Co., 228 Ky. 219, 14 S. W. (2d) 780, and, when the instructions taken as a whole and considered together properly present the law applicable to the case, no valid objection can be made to them. Fullenwider v. Brawner, 224 Ky. 274, 6 S. W. (2d) 264. We find no merit in the complaint that the instructions were prejudicial to appellants. But on another trial the correction suggested should be made in the first instruction.

It is insisted, finally, that the amount of the verdict is so excessive as to strike the mind at first blush as the result of passion and prejudice on the part of the jury. Shoulders was 32 years of age, with an expectancy of 29.43 years. He had a wife and one child. He weighed about one hundred eighty pounds, and was a sound, healthy man. He was industrious, sober, saving, and of good character. His father-in-law testified that his wages ranged from $60 to $90 each pay day, which covered work for two weeks. It appeared that there was due him when he died about $86, but it may have been a little more than the earnings for two weeks. It is not shown whether he had continuous employment at the mines, and it is not likely that he did. It is shown that he had been working at a particular entry for about five

months. He had accumulated no property. His actual earnings over a period of a year or more were not shown. Taking as a basis the wages assumed to have been earned by Shoulders during the last two weeks of his life, appellee calculates possible gross earnings for the full expectancy shown by the life tables as amounting to $53,000.

It is apparent, however, that $30,000 at simple interest would produce as large a sum, leaving the principal intact at the end of the period. If simple interest should be counted at only 4 per cent., the aggregate of the annual additions and the principal sum would exceed the possible earnings, if the same wages were maintained and the miner worked every working day. It is also to be observed that the present worth of the gross earnings as estimated by appellee would not equal the amount of the verdict in this case. Cf. Louisville & N. R. Co. v. Massie's Adm'r, 138 Ky. 449, 128 S. W. 330, and Ohio Valley Electric Ry. Co. v. Brumfield, 180 Ky. 743, 203 S. W. 541. It is argued that the court should take judicial notice of the expense necessary to be incurred in recovering the damages and deduct it, considering upon the question of compensation to the estate only the net amount likely to be paid to the administrator. The defendant is not liable for such expense, and the reasonableness of the verdict must be tested without deduction of the expenses that may be incurred in recovering it. Certain cases are cited for consideration in this connection. In Chesapeake & O. R. Co. v. John's Adm'r, 155 Ky. 264, 159 S. W. 822, 825, 50 L. R. A. (N. S.) 853, a judgment for $25,000 was upheld. The decedent was 34 years of age, a healthy man with good habits, earning from $115 to $120 per month. The verdict included both compensatory and punitive damages, and the court said:

"Manifestly some part of the amount assessed by the jury was exemplary damages, but how much we are left to speculation. The courts of this state have been very conservative in the amount of damages which they permit to be assessed in personal injury cases; but of late years, in view of the decreased purchasing power of money, it has shown a disposition to approve larger verdicts."

In Louisville & N. R. Co. v. Setser's Adm'r, 149 Ky. 162, 147 S. W. 956, 960, a verdict for $20,000 was affirmed, but it included both compensatory and punitive damages. The court said: "As compensation alone, it

might be said that $20,000 was excessive, and that $20,-000 as exemplary damages alone would be excessive;'' but under the circumstances the verdict including both elements of damage was not disturbed. In Continental Coal Corp. v. Cole's Adm'r, 155 Ky. 139, 159 S. W. 668, a verdict for $20,000, embracing punitive and compensatory damages, was sustained. That verdict was the result of a second trial. In the first trial a verdict of $30,000 had been returned by the jury, but the judgment was reversed on other grounds. Louisville & N. R. Co. v. Setser's Adm'r, 138 Ky. 476, 128 S. W. 341. The opinions in cases of personal injury not resulting in death are put aside, since the measure of damages applied in them is radically different, and the discussion is not especially apposite or instructive on the question we have in hand. Cf. Kentucky D. & W. Co. v. Wells' Gdn., 149 Ky. 275, 148 S. W. 375; Louisville & N. R. Co. v. Melton, 127 Ky. 276, 105 S. W. 366, 110 S. W. 233, 112 S. W. 618, 32 Ky. Law Rep. 51, 33 Ky. Law Rep. 321, 1042. The same is true of cases involving the death of infants without earning capacity. Cf. I. C. R. Co. v. Watson, 117 Ky. 374.

In Chicago, St. L. & N. O. R. Co. v. Benedict's Adm'r, 154 Ky. 675, 159 S. W. 526, a verdict of $12,500 for the death of a workman was approved. The wages of the employee in that case were very much smaller than the wages of the workman killed in this instance, and it is argued that a verdict proportionately as much larger as the wages exceeded those there shown would come within the reasoning and authority of the decision. But the wages being earned is merely evidence for the jury to consider, and the damages recoverable do not depend solely upon the earnings. That is an important circumstance, but it is only one element, and must be considered in connection with many other pertinent facts. Appellant cites Chesapeake & O. Ry. Co. v. Equitable Trust Co., 202 Ky. 173, 258 S. W. 968, and Louisville & N. R. Co. v. Wingo's Adm'x, 213 Ky. 336, 281 S. W. 170, where judgments were reversed because excessive, but both cases arose under the Federal Employers' Liability Act. (45 USCA secs. 51-59). See, also, Director General v. Chapman's Adm'x, 195 Ky. 364, 242 S. W. 365. The measure of damages under that act is entirely different, consisting of compensation for the loss of pecuniary benefits by the dependents of the decedent. This court, under that act, has sustained a judgment for $28,000

compensation, apportioned among four dependents, together with a recovery of $5,000 for conscious pain and suffering from the injury endured by the deceased before death. Louisville & N. R. Co. v. Jolly's Adm'x, 232 Ky. 702, 23 S. W. (2d) 564. See, also, Louisville & N. R. Co. v. Holloway, 168 Ky. 262, 181 S. W. 1126, affirmed 246 U. S. 525, 38 S. Ct. 379, 62 L. Ed. 867.

Decisions under the Federal act obviously shed little light on cases where the measure of damages is the loss to an estate by reason of the destruction of the earning power of a man. The character and extent of damages allowed in such cases have been the subject of frequent discussion. Cincinnati, N. O. & T. P. Ry. Co. v. Lovell's Adm'r, 141 Ky. 249, 132 S. W. 569, 47 L. R. A. (N. S.) 909; Louisville & N. R. Co. v. Kelly, 100 Ky. 421, 38 S. W. 852, 40 S. W. 452, 19 Ky. Law Rep. 69; Louisville & N. R. Co. v. Morris, 20 S. W. 539, 14 Ky. Law Rep. 466; Chesapeake & O. Ry. Co. v. Lang, 100 Ky. 221, 38 S. W. 503, 40 S. W. 451, 41 S. W. 271, 19 Ky. Law Rep. 65; Louisville, C. & L. R. Co. v. Case, 9 Bush, 736; Louisville & N. R. Co. v. Clark, 105 Ky. 571, 49 S. W. 323, 20 Ky. Law Rep. 1375; Lexington Utilities Co. v. Parker, 166 Ky. 81, 178 S. W. 1173; Big Hill Coal Co. v. Abney, 125 Ky. 355, 101 S. W. 394, 30 Ky. Law Rep. 1304; Louisville & N. R. Co. v. Engleman, 146 Ky. 19, 141 S. W. 374; Louisville & N. R. Co. v. Ward's Adm'r, 44 S. W. 1112, 19 Ky. Law Rep. 1900. This court has held repeatedly that the jury should be instructed only to the effect that the measure of damages in a death case is such sum as will reasonably compensate the estate of the decedent for the destruction of his power to earn money (Lexington Utilities Co. v. Parker's Adm'r, 166 Ky. 81, 178 S. W. 1173); and that tribunal should not be told that the loss is the amount which would probably be made and saved but for the intervening death. Cf. Cincinnati, N. O. & T. P. R. Co. v. Lovell's Adm'r, 141 Ky. 249, 132 S. W. 569, 47 L. R. A. (N. S.) 909. In Louisville & N. Railroad Co. v. Morris' Adm'r, 20 S. W. 539, 540, 14 Ky. Law Rep. 466, in answer to the contention that the damages are limited to what the party entitled to them has been injured by the death, and that this means what the decedent would have accumulated or saved, after deducting his living expenses, this court said:

"A court could not well enter into such an inquiry. It would at least involve an investigation

of the condition in life of the decedent, and it seems to us to embark the court upon a sea of speculation almost without limit."

Like difficulty has confronted the courts in other jurisdictions. Cf. Perham v. Portland General Electric Co., 33 Or. 451, 53 P. 14, 24, 40 L. R. A. 799, 72 Am. St. Rep. 730; Arizona Binghampton Copper Co. v. Dickson, 22 Ariz. 163, 195 P. 538, 44 A. L. R. 881; St. Louis, I. M. & S. R. Co. v. Craft, 115 Ark. 483, 171 S. W. 1185, L. R. A. 1916C, 817, annotation 820. In the very nature of things it is not humanly possible to arrive at exact results because of the variableness of the factors entering into the calculation. The matter at last must be left to the sound discretion of a jury (Louisville & N. R. Co. v. Cox's Adm'r, 137 Ky. 388, 125 S. W. 1056—erroneously styled Cox's Adm'r v. L. & N. R. Co. in 137 Ky. 388), and the established rule in this state is that the court will not interfere with the discretion of the jury, unless the amount of damages allowed is so large and disproportionate to the probable loss as to strike the mind at first blush as necessarily the result of passion and prejudice on the part of the jury, or the consequence of a mistake in the application of the law. The power is sparingly exercised and only in extreme cases. Louisville & N. R. Co. v. Mitchell, 87 Ky. 327, 8 S. W. 706, 10 Ky. Law Rep. 211; Kentucky T. & T. Co. v. Wilson, 165 Ky. 123, 176 S. W. 991; Louisville & N. R. Co. v. Scott's Adm'r, 188 Ky. 99, 220 S. W. 1066; Louisville & N. R. Co. v. Howser's Adm'r, 201 Ky. 549, 257 S. W. 1010, 36 A. L. R. 327; Louisville & N. R. Co. v. Smith's Adm'r, 203 Ky. 513, 263 S. W. 29, 35 A. L. R. 1238; Cincinnati, N. O. & T. P. R. Co. v. Harrigan's Adm'r, 149 Ky. 53, 147 S. W. 942. A review of the cases involving a discussion of the subject of excessive damages will disclose a constant conservatism on the part of this court in interposing its power to rejudge the result reached in a damage case by a properly instructed jury. The line which marks the extreme limit is not definitely defined, but the leaning of the court is toward upholding the deliberate judgments of the tribunal erected by law to determine that question. But, when the limit has been exceeded, the court will not shrink from its duty to grant a new trial. A diligent search has disclosed no instance in this state where a verdict fixing damages for the wrongful death of a laboring man at a sum as large as it was in this case

has been upheld. The court is constrained to the conclusion that the verdict of the jury in this case is excessive and beyond the limits of any reasonable calculation of damages to the estate of the decedent.

The judgment is reversed for a new trial in accordance with this opinion.

Whole court sitting.