⊙—96(1)

Prudie SWIFT, Administratrix of the Estate of Hayward Swift, Deceased, Plaintiff,

v.

ILLINOIS CENTRAL RAILROAD COMPANY, Defendant.

No. 576.

United States District Court
W. D. Kentucky, Owensboro Division.
June 11, 1955.

N.Y.S. 109; see also generally as to burden of proof by party alleging a fact, Delaware Coach Co. v. Savage, D.C., 81 F.Supp. 293.

W. D. Bratcher, Greenville, Ky., for plaintiff.

Thomas E. Sandidge, Owensboro, Ky., Otto C. Martin, Hartford, Ky., for defendant.

SWINFORD, Judge.

This is an action brought by the plaintiff, Prudie Swift, administratrix of the estate of Hayward Swift, against the Illinois Central Railroad Company to recover damages for his wrongful death. The case was tried without the intervention of a jury and submitted to the court for findings on both law and fact.

Hayward Swift was born in Ohio County, Kentucky, on September 22, 1936. On October 18, 1952, twenty-six days after he had passed his sixteenth birthday, he was employed as a common laborer with a section crew or right of way maintenance crew of the defendant railroad company. While engaged in unloading riff rock from a railroad car and while using a common pick as a tool, Hayward Swift fell and struck his head against one of the rocks. This occurred on November 18, 1952. He continued to work until November 27, 1952. Shortly after the injury he was taken to the local physician, Dr. C. L. Sherman, who was the physician for the defendant company. On November 30 he was committed to the Illinois Central Hospital at Paducah, Kentucky, and was placed under the care of Dr. Robert L. Reeves, internist in charge of the medical cases.

Hayward Swift died on December 14, 1952.

The defendant contends that no negligence on its part is shown; that it furnished the deceased a reasonably safe place in which to work, safe tools, and that any injury which he sustained was through his contributory negligence and through no fault of the defendant. The defendant takes the position that although he was under 18 years of age, that fact was not known to it since the deceased represented himself to be, by written statement, 21 years of age. The defendant offers the testimony of its employing agent who says that at the time of employment an older brother of the deceased also represented him to be 21 years of age. As another defense it is contended that the death of the deceased was not caused by the injury which he received but was the result of a disease diagnosed by Dr. Reeves as encephalitis lethargica.

These defenses must be considered in the light of the following quoted sections of Chapter 339 (known as the child labor laws) of the Kentucky Revised Statutes:

"339.240 Minors between sixteen and eighteen, restrictions on employment of * * *.

"(1) A minor who has passed his sixteenth birthday but is under eighteen may be employed, permitted or suffered to work in, about or in connection with any gainful occupation, except as provided in subsections (2) and (3) of this section.

"(2) A minor of such age may not be employed, permitted or suffered to work in, about or in connection with any of the occupations enumerated or described in paragraphs (d), (e) and (f) of subsection (2) of KRS 339.230, except that such a minor who is employed under a written apprenticeship agreement that has been approved by the State Apprenticeship Council may perform work in, about or in connection with such enumerated or described occu-

pations if the work is incidental to the apprentice training, is performed intermittently for short periods of time, and is under the direction and supervision of an instructor as a necessary part of the apprentice training."

"339.230 Minors between fourteen and sixteen, restrictions on employment of * * *.

\* \* \* \* \* \*

"(2) He may not be employed:

\* \* \* \* \* \*

"(f) In any place of employment, or at any occupation, that is hazardous or injurious to the life, health, safety or welfare of such minor."

"339.280 Employment certificates required.

"Before any minor under eighteen years of age shall be employed, permitted or suffered to work in, about or in connection with any gainful occupation, the person employing such minor shall procure and keep on file and accessible to any school attendance officer, inspector of labor or other person authorized or charged with the enforcement of KRS 339.-210 to 339.450, an employment certificate for such minor as hereinafter provided. (1948, c. 107, § 8. Eff. 6–17–48.)"

"339.400 Employer's register; posting copy of law and working hours.

"Every person employing minors under eighteen years of age shall keep a separate register containing the names, ages, and addresses of such employes, and the time of commencing and stopping work for each day, and the time of the beginning and ending of the daily meal period, and shall post and keep conspicuously posted in the establishment wherein any such minor is employed, permitted or suffered to work, a printed abstract of KRS 339.210 to 339.450, and a list of the occupations prohibited to such minors, together with a notice stating the working hours per day for each day in the week required of them. These records and files shall be open at all times to the inspection of the school attendance and probation officers, and representatives of the Department of Industrial Relations and the Department of Education. (1948, c. 107, § 19. Eff. 6–17–48.)"

The Kentucky Legislature has written laws that will protect children under 18 years of age from exploitation by their parents or employers of labor. These laws, properly applied, are intended to protect children from themselves. They recognize that a child under 18 years of age is not sufficiently mature to protect himself, nor has he sufficient judgment to choose employment adapted to his age and experience. It is more usual than unusual that a teen-age boy, with the recklessness of youth, will endeavor to perform feats of strength and danger and to take chances on life and limb that would not be undertaken or considered by men of more mature years.

Riff rock, as described by the witnesses, are stones hauled in freight cars to be dumped at various points on the right of way to be used as filling and ballast along the track and in construction work in maintenance operations by railroad companies. These stones sometimes weigh as much as seven hundred pounds and must frequently be prized or cut out of the car, from which they are dumped, by hand tools. From the evidence the deceased was using a hand pick which was loose on the handle. In an endeavor to perform his work, in handling this tool, he slipped, fell and struck his head against one of these riff rocks.

At the time he entered upon his duties he was given no special instruction by the foreman, was not placed under the supervision of any older workman, and did not have placed in his hands a sound and adequate tool. While a hand pick is a simple piece of equipment it is nevertheless dangerous in the hands of an inexperienced sixteen year old boy who, the evidence showed, weighed 120 pounds.

It would have been difficult for the foreman of a section crew to have found a place of employment or an occupation that was more hazardous and injurious to the life, health, safety and welfare of this minor. Any work around a railroad car and any work of a section crew is hard work—much too hard for a small sixteen year old boy, who tried to make a full hand, without injury to his health or welfare. To attempt to manhandle with a common pick heavy rock weighing fifty, two hundred and seven hundred pounds is certainly a hazardous occupation and work of that kind cannot be considered work of safety.

■ The child labor statutes, as is said by the Kentucky Court of Appeals in Hooven & Allison Co. v. Cox's Adm'r, 268 Ky. 266, 104 S.W.2d 969, are designed to protect an infant from the employer who has suffered him to be subjected to such a risk, even though the violation of the law furnished merely the occasion for the injury and was not technically its proximate cause.

■ The unlawful employment is regarded as the proximate cause of the injury and the employer is liable for those injuries against which the statute is intended to guard, or for injuries that naturally and probably follow the statute's violation. 39 Corpus Juris, 300, sec. 427, 56 C.J.S., Master and Servant, § 194.

■ The placing of this child in this hazardous occupation was the proximate cause of his death and the very thing which the statute seeks to guard against.

As to the matter of the deceased's age, I am of the opinion that the defendant's employing agent, Carter, knew that this boy was not twenty-one years of age. Hayward Swift had barely passed his sixteenth birthday. He had never shaved and gave the appearance of a callow youth. He was small for his age and only weighed 120 pounds. Certainly he must have appeared to raise some question in the mind of this employer when the fact. was that he was barely within five years of the prescribed age. I am further con-

vinced from the evidence that the brother of the deceased told Carter that this boy was only sixteen years of age and that the employment was without regard to what the actual age was so long as the employer held a written document in which the deceased had given his age as twenty-one years. A record of this boy's birth was in the county seat of the county where he was seeking employment. There must have been some question raised at the time he filed his application since Carter himself testified he told the boy he would have to be twenty-one years of age. This would clearly indicate that the question of age must have been under consideration by both parties and especially so when he gave the age of twenty-one which was barely over the mark.

■ If courts permit employers to hide behind a statement of the youth himself the laudable and worthy purposes of the statutes can easily be defeated. This boy wanted a job; the wages were high. It is very likely that his parents wanted him to have the job although there is nothing to indicate that fact. I mention it because, in certain cases, great emphasis has been placed upon the fact that the parents gave their consent or acquiesced without objection in hazardous employment of their infant children. The courts should not place stress upon such a fact. It should be realized by judges that parents of such children are frequently not much more than children in the development of their minds and reasoning powers. It is not greed or lack of parental love, but many times sheer necessity or an ambition to have things which money secured from high wages can buy that cause parents to act as they do. It may be that these parents did not realize how dangerous the employment was and so between the lack of knowledge, indifference, or sheer greed of the parents, and the unconcern of the employer this boy lost his life. The employer was not relieved from liability by the infant misrepresenting his age at the time of employment even though the employee was engaged in good faith and

belief that he had reached lawful age. Kentucky courts have been consistent in holding this in their construction of the statutes. It must be recognized that a contrary holding would result in an indiscriminate evasion of the statute and permit the parties to commit by indirection that which is expressly prohibited by statute in an effort to protect our children and in the furtherance of wholesome public policy. Blanton v. Kellioka Coal Co., 192 Ky. 220, 232 S.W. 614; Sanitary Laundry Co. v. Adams, 183 Ky. 39, 208 S.W. 6.

■ Our Kentucky Court of Appeals has uniformly ruled that in the employment of an infant the master is acting at his peril and if he employs a child in violation of the statute he is liable for all damages sustained by the child and this liability is not relieved by the child misrepresenting his age at the time of employment. Wynn Coal Co. v. Lindsey, 230 Ky. 53, 18 S.W.2d 864.

Many of the cases on this question are dealing with infants under sixteen years of age and it is urged that the language of the courts must not apply and is not appropriate to one who has passed his sixteenth birthday. With this reasoning I cannot agree. Subsection (f) KRS 339.230, is meant to apply with equal force to all youths under eighteen. The members of the legislature were wise. Children fifteen and under certainly need every protection. They have the protection of the law which requires their parents to give consent and the statute enumerates the kinds of employment in which they cannot engage. They have the additional restraint of the truant officer who is checking on their whereabouts when they are absent from school. To my mind, if there is any difference, the law should be more stringent in protecting those between sixteen and eighteen. This case is a perfect example of my reason for this statement. This boy had just passed his sixteenth birthday. He had come out of that boyhood age with the protection and restraining influence which the law imposes upon his parents and which the school author-

ities are under compulsion to enforce. He had reached that twilight zone in which he was a man and yet not a man. He no longer had to go to school and he wanted to make some money. He thereby was the prey for his parents, who needed additional income, and for an employer who could use his services to an advantage.

Of course, no records were kept by the employer, as required by KRS 339.280 and KRS 339.400, since the employer was relying upon the fact that the boy had said that he was twenty-one years of age. This was another shield and protection intended for him of which he did not have the benefit.

I must conclude that the statute has been violated and the defendant cannot evade its responsibility by a plea of confession and avoidance.

The matter of determining the cause of the death of the deceased is one which must address itself to a preponderance of evidence and a determination by the court of the cause of this death from the evidence. On the one hand the court has, and certainly respects, the statements of the physician who filled out the death certificate. This evidence is of great weight. Dr. Reeves is positive in his diagnosis of encephalitis lethargica. He resorted to methods known to science to make his diagnosis. He says that it is as positive as medical science known to him can be. The spinal fluid taken from the patient confirmed his medical opinion from the subjective and objective symptoms which he had. Nevertheless, his evidence is only expert opinion evidence and valuable as it is it must give way when compared with substantive facts. In other words, the court feels that if it must respect one theory of the cause of this death, which it undoubtedly must do, it is more in keeping with the justice of the case to ignore evidence which is purely opinion evidence, even though scientific, in favor of evidence establishing positive facts about which there is no question.

■ This boy was sixteen years of age; he had never been under a doctor's

care. He was apparently, from all the record discloses, a perfectly normal and healthy youth. From the time he received the injury until his death twenty six days later he had gone through a period of illness from severe headaches to a semiconscious and dull state, into a state of coma and unconsciousness. It is not unreasonable to conclude from these facts that his death was the proximate result of the injury. It is my judgment that even though he worked for a few days after the injury, he was suffering a great deal from the injury and when he visited Dr. Sherman, a company doctor, on or about the 27th of November, he was then in a dying condition. Dr. Sherman diagnosed his case as acute hepatitis or an inflammatory condition of the liver. Dr. Sherman's examination was only superficial but he testified that he could see that this boy was "pretty sick" and he referred him to the hospital. He stated: "I remember he was drowsy, stupid, didn't answer questions * * *." That was a date which is best fixed as about the 27th of November or nine days after his injury. I must conclude that his death was the result of the injury which he received.

The question of the amount of damages to be awarded in cases of this character is always difficult. Precedents are of some value, but when differences in time, circumstances, economic conditions and the ability of the deceased are considered, the amounts awarded by other courts cannot be of any real significance. Under the life expectancy table, KRS, one sixteen years of age has a life expectancy of 49.56 years. The deceased was earning at the time of his death $58.40 a week. At that rate he would have earned $3,036.80 per year. Had the employer observed the child labor law, the deceased could not have been earning that amount nor could any other employer have paid him that amount. He was an inexperienced common laborer. I think it is fair to assume that he could have earned over a period of years at least $1,000 per year which, with his life expectancy, would amount in the course of his lifetime to $49,560. If we may allow for periods of depression and time of unemployment it may reasonably be expected that the deceased has had a loss to his estate by reason of his wrongful death in the sum of $45,000.

I am of the opinion that the plaintiff should recover of the defendant the sum of $45,000. West Kentucky Coal Co. v. Shoulders' Adm'r, 234 Ky. 427, 28 S.W. 2d 479. There should be added to this the amount of the funeral expenses of $650. The plaintiff should also recover the costs of this action.

Findings of fact, conclusions of law and judgment in conformity with this opinion are this day entered.